## H. B. DORSEY V. THE STATE.

No. 1560. Decided January 16, 1898.

**1. Manufacturing, etc., Adulterated Articles of Food—Information.**

An information or indictment brought under articles 430 and 432 of the Penal Code, for the manufacture and offer of sale of an adulterated article of food, to be sufficient, should allege the article with which it was adulterated. And where it was alleged that flour was the article adulterated, and the proof showed that it was adulterated by being mixed and intermingled with corn meal, Held, the information should have alleged that the flour was adulterated with a certain portion of corn meal, and that said meal was a substance which did reduce and lower or injuriously affect the quality of the flour; or it should have alleged that the flour was adulterated with meal, which was an inferior or cheaper substance than the flour with which it was mixed.

2. Same—Labeling Mixtures of Food—Police Power—Onerous Legislation.

It is competent, under the police power of the State, to enact a law stating in dis-tinct terms, that if any person shall adulterate any article of food or drink (naming the article) with any other substance without labeling the same, such person shall be guilty of an offense; but it is not competent for the Legislature to make criminal the mixing or mingling of articles of food which are wholesome and nutritious, and prohibit the sale thereof. But our statute, article 432, is too general in terms, in that it embraces all articles of food and drink; and it is extremely onerous in requiring healthy articles of food, etc., when mingled, to be labeled. To be enforcible, the act should have named the particular article the adulteration of which is prohibited from manufacture and sale unless labeled.

APPEAL from the County Court of Parker. Tried below before Hon. A. H. CULWELL, Special Judge.

Appeal from a conviction for fraudulently, etc., manufacturing and offering for sale an adulterated article of food; penalty, a fine of $100.

The charging part of the information is set out in the opinion. Defendant's motion to quash the same was overruled.

No statement necessary.

*Martin & Flanary* and *G. A. McCall,* for appellant.—The mere mixing of two kinds of flour of the same consistency and quality, the one being cheaper than the other, and selling the same, can not under any phase of the statute constitute adulteration of food, and the court erred in so holding. It is admitted without contradiction that the corn flour and the wheat flour are of the same strength, quality, and consistency. Com. v. Hartman, 19 Pa. Co. Ct. R., 97, 6 Pa. Dist. R., 136; People v. Marx, 51 Am. Rep. (99 N. Y., 377), 34; In the matter of Jacobs, 50 Am. Rep. (99 N. Y., 98), 636.

Adulteration statutes, according to the books, have two objects in view: first, the prevention of the sale of food and drink that may be injurious to health; second, the prevention of fraud upon the public in the sale of articles of food and drink. In all cases where the article is injurious to health, that fact must be alleged and proven. In all cases where the prevention of fraud upon the public is the purpose of the statute, either the fraud must be alleged and proven, or the Legislature must name or define an act to be an adulteration which the courts would adjudge to be a fraud. This classification does not include certain statutes which wholly prohibit the sale of certain named articles or mixtures. In some cases the courts have held that the Legislature may do this in the exercise of police power, but these statutes are not strictly adulteration statutes. This court will observe that the statutes concerning the adulteration of food have seven different subdivisions, and the defendant in this cause, by his exceptions, strove to compel the State in her information to state under which clause or subdivision she intended to prosecute the defendant. These exceptions were all overruled. This we think was clear error. The defendant, however, being anxious to secure an opinion on the merits of the case in order that he might know whether he could, as manager of the Crystal Palace Mills, lawfully continue the manufacture and sale of this flour, agreed with the county attorney that this prosecu-

tion was brought under section 2, subdivision b, or article 432 of the Revised Statutes of 1895: "If any inferior or cheaper substance or substances have been substituted wholly or in part for the article." The county attorney insisted that the act of the defendant was a violation of that subdivision of the definition of adulteration, and no other. The defendant denied that it was a violation of said subdivision, and moreover, if it were, then said subdivision under such a construction would be so restrictive of trade and so hamper trade as to be violative of the Constitution. It was proven by the State and not denied by the defendant that he manufactured an article of flour as manager of the Crystal Palace Mills, and sold it, consisting of ninety parts of wheat flour and ten parts of corn flour; that the corn flour was obtained first by grinding the corn and then bolting from the meal all bran, germ, and darker particles, leaving pure flour of corn, the same being of the same quality, strength, and consistency as flour obtained from wheat. The only difference between the flours, according to the proof, is that the corn flour is cheaper than the wheat flour. The question then is, is it an adulteration of food to mix and sell two articles of food which are of the same quality, strength, and consistency, the one being merely cheaper than the other. It seems clear that this act of the defendant could not be a violation of section 1, subdivision b, article 432, for the undisputed proof shows that the mixing of the two flours did not reduce or lower or affect its quality or strength as is required in said section. Section 1 reads as follows: "If any substance or substances has or have been mixed with it so as to reduce or lower or injuriously affect its quality or strength." It was conceded that it was not a violation of section 3 of said subdivision, because nothing was extracted from the article, nor a violation of section 4 of said subdivision, because it was not said to be an imitation of flour, but was a mixture of two flours, and was flour, and was sold as such. It is not possible to claim that it was, or the action of the defendant was, a violation of any subsequent section of the said subdivision.

The court will observe that the statute on which this prosecution was based does not say that the defendant should do the act with fraudulent intent, though some of the other articles in regard to the adulteration of food and drink do use that term. The statute under which the defendant was convicted uses only the term "knowingly." The information, however, charged that he did it fraudulently as well as knowingly. The allegation as to fraud seems to be surplusage and unnecessary. Adulteration of food in its general sense seems to be defined to be an adding of some cheaper or baser substance, or the extracting of some necessary constituent, so that the article adulterated is thereby rendered impure, spurious, or inferior. Now, it can not be contended that the act of the defendant is a fraud, or that it rendered the article impure, spurious, or inferior. It was the mere mixing of two articles of the same quality, strength, and consistency, the one being merely cheaper than the other.

Would it be an adulteration of food to mix two grades of wheat, or of rice or molasses, and make an article of food and sell the same? If it be an adulteration to mix these two articles which are of the same quality, strength, and consistency, merely because the corn flour is cheaper than the wheat flour, then to-morrow, if the corn flour should rise to a price equal to the wheat flour, it would be no adulteration to do this act. If this be the construction that is to be put upon section 2, subdivision b, of article 432 of the Penal Code, then we say that we think said article is so restrictive of trade and violative of the personal liberty of the citizen as to be unconstitutional. Again, if we are wrong in our construction, still we say that the act of the defendant was the mere mixing of two articles of food, and not a substitution of the one in whole or in part for the other, and the Legislature prohibits the mixing of two articles of food only when the mixing reduces or lowers or injuriously affects its quality or strength. See sec. 1, subdiv. b, art. 432, Penal Code. If its quality or strength is not affected by mixing the two articles, but remains the same, then there would be neither sense nor reason in prohibiting the sale of the mixture, and this the Legislature does not attempt to do. The Legislature intended to draw a distinction between a mixing of two articles of food and a substitution of one article for another in whole or in part, as will be seen by an inspection of the two articles of the statute above cited. The act of the defendant was unquestionably the mixing of two articles of food. If it were the substitution of one article for another, then it was the substitution of an article of the same quality, strength, and consistency, and was therefore the same as the unmixed article. We offered to prove that the mixture was healthful and palatable.

The defendant earnestly asks the court for a ruling upon the merits of the matter for future guidance in the management of the business he represents.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State, cited Sanchez v. State, 27 Texas Crim. App., 14; Penal Code, arts. 427, 432; 4 Am. Crim. Rep., 16, 22; 7 Id., 32; McClain's Crim. Law, sec. 33.

HENDERSON, JUDGE.—Appellant was convicted of knowingly and fraudulently adulterating an article of food, and his punishment assessed at a fine of $100; hence this appeal.

As appellant made a motion to quash the information, and assigns the refusal of the court to quash the same as error, we will set out the charging part of the information, to wit: "That H. B. Dorsey did then and there knowingly and fraudulently manufacture, offer for sale, and sell a certain article of food, to wit, flour, which was then and there known by him, the said H. B. Dorsey, to be adulterated, contrary," etc. There are two statutes pertaining to this subject, under either of which the indictment may have been drawn. The first is article 427, Penal Code

1895, which provides, "If any person shall fraudulently adulterate, for the purpose of sale, any substance intended for food, * * * with any substance injurious to health, he shall be punished by fine not less than $50 nor more than $500." Article 430 provides, "No person shall within this State manufacture, offer for sale, or sell any article of food, which is by him known to be adulterated within the meaning of this law;" and the punishment assessed is a fine not exceeding $100. Article 432 of the Penal Code undertakes to more specifically define the meaning of the term "adulteration," and in what it consists. As to foods or drinks, the following are the provisions necessary to be quoted, so far as applicable to this case: "(1) If any substance or substances has or have been mixed with it so as to reduce or lower or injuriously affect its quality or strength. (2) If any inferior or cheaper substance or substances have been substituted wholly or in part for the article." "(6) If it be colored or coated or polished or powdered, whereby damage is concealed, or it is made to appear better than it really is, or of greater value." Appended to this article is the following: "Provided, that the State health officer may, with the approval of the Governor, from time to time declare certain articles or preparations to be exempt from the provisions of this law; and provided further, that the provision of this act shall not apply to mixtures or compounds recognized as ordinary articles of food, provided the same are not injurious to health, and that the articles are distinctly labeled as a mixture, stating the components of the mixture." The proof in this case shows (which was admitted by appellant) that the adulteration was of flour; that is, flour and meal were mixed or mingled together by a bolting process which was in operation in defendant's flouring mill. The mixture or compound contained 90 per cent of flour and 10 per cent of corn meal.

The contention of the defendant as to the indictment is that it should have stated how the adulteration was made; that is, the contention is that it was necessary to prove an admixture or adulteration of the flour, and to show how the same was adulterated, by evidence, and that the indictment should have contained the allegations, so as to put appellant on notice of what he was charged to answer. For instance, in this case it is insisted that the indictment should have alleged that the flour was adulterated with a certain portion of corn meal, and that said meal was a substance such as to reduce or lower or injuriously affect the quality of the flour, or that said flour was adulterated with meal, which was an inferior or cheaper substance than the flour with which it was mixed. It occurs to us that this contention is sound. There are a number of articles or substances which might be intermingled with flour so as to reduce or lower or injuriously affect its quality or strength, or which are of an inferior or cheaper character; and under our system of criminal pleading the appellant should have been charged with the particular substance with which the article in question was adulterated, so that he might be prepared to meet the State's case.

We take it that the indictment in question was brought under article 430, and not under article 427, inasmuch as there is no allegation, nor does the proof indicate that the meal shown to have been mixed with the flour was injurious to health. In fact, the contrary appears. It further appears from the evidence in the case that both compounds which are claimed to constitute the adulteration are recognized as ordinary articles of food, and are not injurious to health. In such case, under the provisions of the law, if such articles are mixed together, and are distinctly labeled as a mixture, the person manufacturing such article is not indictable. It would therefore seem to follow that the indictment, to be good under this article, should negative the fact that such substances or articles of food, when combined so as to produce a wholesome article of food, were properly labeled. Of course, it is competent, under the police power of the State, for the Legislature to pass an act stating in distinct terms, as to any article of food or drink, that if any person, etc., shall adulterate such article (naming it) with any other substance, without labeling same, such person shall be guilty of an offense. We understand this to be the rule laid down by the authorities. Some of the legislation is based on the adulteration of articles of food or drink which are unwholesome or injurious, and this appears to be provided against in article 427 of our statute. Other legislation is aimed at the prevention of frauds on the public, to prevent palming off on them an article of food other or different from that which they are led to believe they are purchasing; and as to the latter, the authorities appear to hold that it is competent for the Legislature to prohibit the mixture or compound altogether, though it may not be injurious or unwholesome. See Powell v. Com., 114 Pa. St., 265, 7 Atl. Rep., 913, and authorities there cited; Waterbury v. Newton, 50 N. J. Law, 534, 14 Atl. Rep., 604; Palmer v. State, 39 Ohio St., 236. We would not be understood as indorsing the doctrine laid down in the above authorities. The courts have gone to great length in upholding legislation under the police power. In some decisions it has been so magnified as to be regarded as almost omnipotent. We do not agree to the doctrine that under this power, or any other, the Legislature can make criminal the mixture or mingling of articles of food which are wholesome and nutritious, and prohibit the sale thereof. We can add nothing to the dissenting opinion of Judge Gordon in the case of Powell v. Commonwealth, supra. We do agree to this proposition, that the Legislature, when such articles (namely, articles of wholesome and nutritious food) are mixed and intermingled, can require that the product be labeled, showing the component elements thereof, and punish a failure to so label. We further hold that the present act of the Legislature on the subject is too general in its terms. It simply embraces all articles of food or drink, without naming any, and makes the mixture of any articles of food, however nutritious, without labeling the product, an offense. A great many articles of food are mixed and combined together, and such combinations are not only harmless, but are healthy, as articles of food; and to require all such articles to be labeled,

so as to show the constituent elements composing the same, it occurs to us, is extremely onerous legislation. We hold that an act on this subject, to be enforced, should name the particular article of food, the adulteration of which is prohibited by the Legislature, and which is required to be labeled. In all the cases on this subject which have come to our notice, the Legislature appears to have directed the law to some particular article of food or drink. For instance, in the Powell Case, supra, the act was for the purpose of prohibiting the manufacture of oleomargarine. Now, as bearing on the subject before us, we hold that it would be entirely competent for the Legislature, by an act, to prohibit the sale, etc., of flour mixed with meal, or any other wholesome article, without properly labeling the product of such combination. They have not done this. The prosecution is attempted to be maintained under the general act to prohibit the intermixing of all foods. We do not believe that it was competent for the Legislature to do this.

The judgment is reversed, and the prosecution ordered dismissed.

*Reversed and ordered dismissed.*