COUNTY SCHOOL TRUSTEES OF ORANGE COUNTY ET AL V.
DISTRICT TRUSTEES OF PRAIRIE VIEW COMMON
SCHOOL DISTRICT NO. 8.

No. 7731. Decided May 21, 1941.
Rehearing overruled July 9, 1941.
(153 S. W., 2d Series, 434.)

*K. W. Stephenson,* of Orange, for Appellants.

It was error for the court to deny the county board the right to change the boundaries of the school districts and to redefine the boundaries of each of the alleged new districts, as the school board acted under the law as embraced in Articles 2741, 2766, 2681, 2729a and 2742e, of the Revised Civil Statutes of Texas. Board of School Trustees, Young County, v. Bullock Common Sch. Dist., 55 S. W. (2d) 538; Brownfield v. Tongate, 109 S. W. (2d) 352; 39 Tex. Jur., sec. 141 p. 266.

*E. L. Reid* and *F. W. Hustmyre,* of Orange for appellees.

MR. JUSTICE CRITZ delivered the opinion of the Court.

The salient facts of this case are very brief and simple. The County School Trustees of Orange County, hereinafter designated County Board, were presented with a petition requesting that a portion of Prairie View Common School District No. 8 of Orange County, Texas, be taken out of such common school disrtict and placed in, or added to, Orangefield Independent School District in such county. On filing of such petition the County Board notified the trustees of both the above-named school districts and set a date for a hearing to determine whether or not the above petition should be granted. The County Board ordered an election to be held in that portion only of Prairie View Common School District No. 8 which was proposed to be detached therefrom. Also the County Board ordered an election to be held for the entire Orangefield Independent School District. Both elections were held, and each resulted in a majority vote in favor of granting the above mentioned petition. After ascertaining the result of the above elections the County Board, on June 12, 1939, entered an order by which said portion of the common school district was detached therefrom and added to the independent school district.

After the happening of the above events the common school district brought this suit in the District Court of Orange County against the County Board and against its members as such, and also against the independent school district and its trustees as such, to contest the validity of the above-described

order of the County Board, and for certain other orders and decrees necessary to effectuate a judgment declaring the order of the County Board illegal and void.

On final hearing in the district court a judgment was entered adjudging the above-described order of the County Board null and void. Also such judgment enjoins the enforcement thereof.

After the entry of the final judgment in the district court the defendants in that court appealed to the Court of Civil Appeals a Beaumont, and that court has certified the following questions to this Court:

"(1) In detaching territory from a common school district and in transferring this territory to a contiguous independent school district, is the County Board of Trustees bound to follow the procedure outlined and prescribed by Article 2742f, V. S. C. S., or should it follow the procedure outlined and prescribed in Article 2742e?

"(2) On the facts stated in this certificate, in its attempt to detach the territory described in the petition filed by Bland and others, should the County Board of Trustees of Orange County have followed the provisions of Article 2742f, or did its orders and proceedings had under the provision of Article 2742e have the effect of transferring this territory from Prairie View Common School District No. 8 to Orangefield Independent School District?

"(3) In our certificate, supra, we make this statement: 'In so far as they are applicable, appellants complied also with Articles 2741, 2766, 2681 and 2729a.' On the facts certified, do Articles 2741, 2766, 2681 and 2729a support the action of the County Board of School Trustees of Orange County in the proceedings taken by it in its effort to detach the territory in issue from Prairie View Common School District No. 8 and in its effort to annex this territory to Orangefield Independent School District?

Before proceeding to answer the above questions we deem that it is necessary to determine what acts or statutes of this State are applicable thereto.

In the beginning of this discussion we will say that this Court finds the school laws of this State very confusing and

difficult of proper interpretation. In 1905 the Legislature passed a very comprehensive school law. (Laws of 1905, p. 263.) Since the passage of that law numerous special and general school laws have been passed, and many validating acts have been enacted. As we understand this record, the only statutes which any of the parties contend are involved in this certificate are Articles 2676, 2681, 2741, 2742e, 2742f, 2742a, 2766, 2729a, 2743, and 2742n. Some of these statutes have been on the books many years, and one was passed as late as 1939. In designating such statutes by number we refer to Vernon's Statutes.

Under Article 2741, which was a part of the law passed in 1905, the commissioners' courts of all organized counties were directed and authorized to subdivide their respective counties into convenient school districts and designate them by number.

Under Article 2766, which was also a part of the law passed in 1905, the commissioners' court of any county was given the authority or jurisdiction to change the boundaries of any independent school district incorporated for free school purposes only, situated in such county, when in the judgment of such court the public good demand such change. The only parties to be notified before such change is made under such article are the trustees of the independent school districts to be affected.

Under Article 2681 of the Revised Statutes, which was passed in 1915, (page 71), the county school trustees are authorized to exercise the authority theretofore vested in the commissioners' court with respect to subdividing the county into school districts and making changes in such district lines.

Under Article 2729a, Acts 1927, 40th Legis., 1st C. S., p. 17, ch. 7, par. 1, the county school trustees of any organized county are authorized to exercise the authority theretofore vested in the commissioners' court with respect to subdividing the county into school districts and making changes in school district lines.

Under Article 2676, Acts 1934, 43rd Leg., 2d C. S., p. 108, ch. 48, sec. 1, of our statutes the general management and control of the public free schools and high schools in each county, unless otherwise provided by law, is vested in five county

school trustees to be elected from the county, and all laws and parts of laws in conflict were repealed.

Section 2 of Article 2742e, Acts 1929, 41st Leg., 1st C. S., p. 259, ch. 109, gives the county board of school trustees in any county authority to create common school districts, to subdivide districts, and to change boundary lines of any and all school districts, provided before any change in the boundary of any common school district is made, the trustees thereof must be given notice of the proposed changes in the boundary lines of the common school district affected thereby.

The Legislature at its first called session in 1929 also passed chapter 47, p. 106, which is known as Article 2742f of our statutes. The enacting clause of which states:

"AN ACT authorizing the County Board of Trustees of each organized county to detach from one and add to another school district territory contiguous to the common boundary line of the districts affected; providing for the adjustment of outstanding indebtedness; repealing laws in conflict."

Under the above Act the County Board of Trustees could detach property from one district and place it in a contiguous district, provided the Board of Trustees in the territory to which the property was to be annexed, by a majority vote, approved the annexation; and provided the petition be signed by a majority of the voters living in the territory to be detached.

In 1931 the Legislature amended Article 2742f by adding section 1a thereto, which authorizes county school trustees to detach property from one or more districts and create a new district. See H. B. 386, p. 235, ch. 140, Reg. Ses. 42d Leg., 1931. This Act only applies to the creation of new districts.

In 1935 the Legislature, by Senate Bill No. 388, p. 790, ch. 339, Acts Reg. Ses. 44th Leg., passed an act purporting to again amend Article 2742f. This 1936 Act purports to repeal in its entirety chapter 47, supra, passed in 1929. The caption of this 1935 Act states that Article 2742f is so amended that it will require an election to be held before the county school board can change a school district by withdrawing territory from one school district and adding it to another school district. With reference to its repeal the provisions of the Act of 1935 state that section 1, ch. 47, Acts 41st Leg., 1st C. S., supra, relative

to detaching territory from one school district and attaching same to another, is repealed. Also the 1935 Act expressly provides that Section 1a, ch. 140, H. B. No. 386, passed at the regular session of the 42d Legislature, p. 235, of the general laws of Texas 1931, "be and the same is hereby amended so as to make Section 1a of said Section 1 hereafter be designated as Section 2742f, and hereafter read as follows: * * *."

The Act of 1935 left Article 2742f in the exact words of the act as passed in 1931 supra, except there was added thereto the last two paragraphs of the present Article 2742f. These additions read as follows:

"And provided further that before any portion of any district has any part thereof detached an election shall be held at which the qualified tax paying voters of such district sought to be divided shall first vote by a majority vote to divide said district and shall define the part of said original district sought to be detached; and provided further that the district to which such territory is desired to be added shall have an election at which the qualified tax paying voters of such original district to which such territory is sought to be added shall vote by a majority vote to assume that proportionate part of the indebtedness of the district from which such territory is detached that the detached territory bears to the original district from which detached, and at said election only those qualified tax paying voters inside the territory of the new formed district shall vote.

"That each and all of said elections shall be held in accordance with the provisions of the General Law governing bonded tax elections in a common or independent school district as the case may be. *And providing further that after the holding of said elections and before the newly formed districts, or either shall be valid the Legislature shall pass a Bill ratifying and confirming the laying out and/or attempted establishment, combining, abolishing or changing of such school districts, and if the Legislature shall fail or refuse to pass such a bill then the districts shall remain as they originally existed.*" (Emphasis ours.)

Articles 2742e-1, passed in 1939, and 2742m, passed in 1935, used almost the identical language and refer to and deal with districts in which no school has been held for five years and in which there are not more than ten resident scholastics. We think that these Articles have no connection with this case, and they will not be noticed further.

1 As already stated, an examination of the Act of 1935, Acts 44th Leg., ch. 339, p. 790, will disclose that, except as to the two clauses above quoted, it substantially re-enacts the law as it theretofore existed. The Act of 1935 contains the following very far-reaching provision: "And providing further that after the holding of said elections and before the newly formed districts, or either shall be valid the Legislature shall pass a *Bill* ratifying and confirming the laying out and/or attempted establishment, combining, abolishing or changing of such school districts, and if the Legislature shall fail or refuse to pass such a *Bill* then the districts shall remain as they originally existed." (Emphasis ours.)

If this provision is constitutional, it operates to freeze all school districts in the State of Texas, regardless of circumstances, emergencies, or conditions, in the same condition that they now exist until two things shall transpire—first, the County Board must act, and, second, the Legislature must pass "*a Bill*," evidently meaning a special act ratifying the action of the County Board. It follows that under the above-quoted provision of the Act of 1935 school districts cannot be established, combined, abolished, or changed without a special act of the Legislature. Of course such an act violates that part of Section 56 of Article III of our State Constitution which provides that "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, * * * Regulating the affairs of * * * school districts."

It will be noted that the above-quoted provision of Section 56 of Article III of our State Constitution prohibits the Legislature from passing any local or special law regulating the affairs of any school district; but such provision is coupled with the further provision "except as otherwise provided in this Constitution." Prior to 1927 there was a provision in our Constiuttion which, as to school districts, provided otherwise than the above-quoted provision of Section 56 of Article III. This "otherwise" provision was found in Section 3 of Article VII, which prior to 1927, provided among other things: "* * * and the Legislature may also provide for the formation of school districts by general or special law without the local notice required in other cases of special legislation, * * *." In 1927 Section 3 of Article VII was amended. As amended there is no provision contained therein authorizing the Legislature to provide for the formation of school districts by local or special law. It follows that since the effective date of Section 3 of

Article VII, as amended in 1927, the Legislature has been without power to pass any local or special law regulating the affairs of any school district. Simply stated, since the effective date of Section 3 of Article VII, as amended in 1927, the above-quoted provision of Section 56 of Article III applies without any exception.

2 It is settled as the law of this State that the Legislature has power by general act to validate invalid school districts. Lyford Ind. School Dist. v. Willamar Ind. School Dist. (Com. App.), 34 S. W. (2d) 854, and authorities there cited; Young v. Edna Ind. School Dist. (Com. App. opinion approved), 34 S. W. (2d) 857. It may be contended that the "ratifying and confirming 'Bill'" referred to in Article 2742f, as contained in the 1935 Act, should be construed or interpreted as having reference to a general and not a special, ratifying, or validating act. To our minds, the act demonstrates no such intent and is susceptible of no such construction. The intent disclosed is for the Legislature to keep its finger on each particular attempt to "laying out and/or attempted establishment, combining, abolishing or changing" of such school districts until it shall approve the particular thing, or things, done by county school boards by passing *"a Bill."* Any other interpretation of the provision of the 1935 Act under consideration would lead to the unreasonable conclusion that the Legislature intended for every school district in this State to remain frozen, unaltered, and unchanged, regardless of conditions or emergencies, unless and until the Legislature shall pass an act validating school districts generally in this State.

We are aware of the fact that it is the general rule in this State that where a statute is reasonably susceptible of two constructions—one of which will render it constitutional and one of which will render it unconstitutional—the courts will follow the interpretation which will render the act constitutional. 9 Tex. Jur., p. 483, sec. 63. We do not apply this rule here because we do not believe it is reasonable to conclude that the Legislature intended this act to refer to a general validating act.

3 We now come to decide whether the unconstitutional part of the Act of 1935 can be eliminated or disregarded, and the balance of the Act allowed to stand. Whether or not this can be done depends upon the object of the law and the manner and extent to which the unconstitutional part affects the balance of the Act. It is the general rule that a legislative act unconstitu-

tional in part is unconstitutional in whole, if "all the provisions are connected in subject matter, dependent on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other." 9 Tex. Jur., p. 473, sec. 56, and authorities there cited. When we come to examine the Act of 1935 we find that its dominant purpose is to deal with the creating and change of school districts. It therefore cannot be said that the Legislature would have passed any part of the Act with the invalid portion eliminated. It follows that the entire Act is void.

If the Act of 1935 is void it repealed no law behind it. Galveston & Western Ry. Co. v. City of Galveston, 96 Texas 520, 74 S. W. 537. This rule applies in this case even though the Act of 1935 contains a section expressly repealing a former act on the same subject. It will not be held that the Legislature would have repealed the existing laws relating to the formation, change, etc., of school districts in this State without sustituting some other laws in their places. Galveston & Western Ry. Co. v. City of Galveston, supra.

4 . Having determined that the Act of 1935 is wholly void, and having further determined that it repealed no law behind it, we reach the inescapable conclusion that the validity or invalidity of the acts and orders of the County School Board of Orange County involved in this case must depend on whether or not they square with the statutes of this State in force at the time the Act of 1935 was passed. It therefore becomes necessary for us to determine what acts were then in force.

5 An examination of our statutes discloses the fact that when we eliminate the Act of 1935, this case must be governed by Section 2 of Article 2742e, Acts 1929, 41st Leg., 1st C. S., p. 259, ch. 109, and Section 1 of Article 2742f, Acts 1929, 41st Leg., 1st C. S., p. 106, ch. 47. Board of School Trustees of Young County v. Bullock Common School Dist. No. 12 (Com. App.), 55 S. W. (2d) 538. In the case just cited it was held: "Both of these acts were passed in the year 1929, at the same session of the Legislature; and both were in effect when the change in question was made by the county board." Further in the opinion it was held: "It is to be noticed that House Bill 25 concerns school districts generally, whereas the other act has reference to common school districts. It is further noted thet the first-mentioned act contains no provision relative to notice and hear-

ing; whereas section 2 of the other act does." Finally the opinion holds: "We are in accord with the holding of the Court of Civil Appeals, in this case, to the effect that the two acts mentioned, having been passed at the same session of the Legislature, and both comprehending the matter of authority in the county board of school trustees to change boundary lines of common school districts, should be construed together as being supplementary to each other in the last-named respect."

As a matter of convenience to those examining this opinion in the future, we deem it expedient to quote the two statutes which we think govern this case.

"SEC. 2. That on and after the passage of this Act the County Board of School Trustees in any county in this State shall have authority and full power to create Common School Districts, to subdivide districts, and to change boundary lines of any or all Common School Districts legally coming under the jurisdiction of the County Board of School Trustees, subject to the supervision of the District Court having jurisdiction over the county where the County Board is appointed or elected; provided that before any changes may be made in boundary lines of school districts the trustees of the Common School District affected shall be notified to appear before the County Board for a hearing, and after said hearing, or the date set for said hearing, the County Board of Trustees may pass such order or orders as will carry out the provisions of this Act; provided, further, that the trustees of the districts affected may appeal from the decision of the County Board to the District Court." Acts 1929, 41st Leg., 1st C. S., p. 259 ch. 109.

"SECTION 1. In each county of this State the County Board of Trustees shall have the authority, when duly petitioned as herein provided, to detach from and annex to any school district territory contiguous to the common boundary line of the two districts; provided the Board of Trustees of the district to which the annexation is to be made approves, by majority vote, the proposed transfer of territory and provided, further, that where the territory to be detached exceeds ten per cent (10%) of the entire district the petition must be signed by a majority of the trustees of said district in addition to a majority of the qualified voters of the territory to be detached. The petition shall give the metes and bounds of the territory to be detached from the one and added to the other district and must be signed by a majority of the qualified voters residing in the said

territory so detached. Upon receipt of the said petition, duly signed, and upon notice of the approval of the proposed annexation by the Board of Trustees of the district to which the territory is to be added, the County Board of Trustees shall pass an order transferring the said territory and redefining the boundaries of the districts affected by said transfer, the said order to be recorded in the Minutes of the County Board of Trustees. Provided that no school district shall be reduced to an area of less than nine square miles." Acts 1929, 41st Leg., 1st C. S., p. 106, ch. 47.

At this point we pause to note that Section 1, Acts 1929, 41st Leg., C. S., p. 259, ch. 109, seems to attempt to validate the acts of the County Board of School Trustees in counties having a population of not less than 9,000 nor more than 9,010 according to the United States Federal census of 1920, etc. Of course we do not mean to even intimate that Section 1 of such act is constitutional. That section of the act, however, may be eliminated, and the balance of the act held valid. From our discussion it is evident that we answer the questions certified as follows:

This case must be governed by Section 2 of Article 2742e, Acts 1929, 41st Leg., 1st C. S., p. 259, ch. 109, and by Section 1 of Article 2742f, Acts 1929, 41st Leg., 1st C. S. p. 106, ch. 47, construed together.

Opinion delivered May 21, 1941.

Rehearing overruled July 9, 1941.