**TRUSTEES OF CRANFILLS GAP CONSOL. SCHOOL DIST. NO. 6 OF BOSQUE AND HAMILTON COUNTIES v. BOARD OF COUNTY SCHOOL TRUSTEES OF BOSQUE COUNTY.**

No. 2555.

Court of Civil Appeals of Texas. Waco.

Feb. 10, 1944.

Rehearing Denied March 9, 1944.

Frank Sparks, of Eastland, for appellants.

H. J. Cureton, of Meridian, for appellee.

RICE, Chief Justice.

Cranfills Gap Consolidated School District No. 6 of Bosque and Hamilton Counties, Texas, is a county line school district comprised of territory within the two counties above mentioned. Acting through its trustees, said School District brought this suit in the District Court of Bosque County against the Board of County School Trustees of Bosque County for the purpose of setting aside an order theretofore made and entered by said County School Board. Trial was had to the court without the intervention of a jury. From an adverse judgment plaintiff below has perfected this appeal.

For convenience, appellant will be referred to herein as the County Line District, and appellee will be referred to as the Board of County School Trustees.

The principal school of said district was situate in Bosque County; and the school authorities of said county exercised jurisdiction and control of the district. A majority of the qualified voters residing within an area described by fieldnotes and embraced within the limits of said County Line District, presented their petition to the Board of County School Trustees of Bosque County, praying that the area in said petition described be detached from said County Line District and be annexed to and made a part of Clifton Independent School District, situate wholly within Bosque County. The Board of School Trustees acted on this petition by passing an order on November 27, 1942, detaching the territory described in the petition from the appellant District and annexed the same to the Clifton Independent School District. On the same date, this transfer of territory was assented to and accepted by the trustees of the Clifton Independent School District. On January 12, 1943, the Board of County School Trustees of Hamilton County assented to the transfer. At the time of the entry of the above mentioned orders there existed an unpaid bonded indebtedness against the County Line District which was not adjusted when the disputed territory was detached from the County Line District nor at the time of the trial of this cause.

It is the position of appellant that each and all of the foregoing proceedings and orders were void and ineffectual, because neither the County Board of School Trustees of Bosque County nor the County

Board of Trustees of Hamilton County had jurisdiction of the subject matter of said orders, for the reason that the sole and exclusive jurisdiction of said County Line District for the purposes above mentioned was vested in the Commissioners' Courts of Bosque and Hamilton Counties.

As authority for its contention appellant cites Article 2744, Vernon's Annotated Civil Statutes, relating to county line school districts, which provides, in part: "Such district shall not be changed or abolished except by the consent of the commissioners court of each county having territory contained therein, and if such a district has outstanding bonds the same shall not be changed or abolished in any way until after such bonds are finally paid and discharged."

In passing upon the questions raised by this appeal it becomes necessary for us to briefly review some of the enactments of our legislature found in that chaotic mass of legislation comprising the school law of the state.

In 1893, the Twenty-third Legislature of this state passed an act "to provide for a more efficient system of public free schools" as an emergency measure because of "the unharmonious and conflicting provisions of the present school law * * *." c. 122. Section 40 of said act made it the duty of the commissioners' courts of the state to subdivide their respective counties into school districts. This section appears as Article 3938 of the Revised Civil Statutes of Texas of 1895.

Article 2744, Vernon's Annotated Civil Statutes, was originally Article 2815b of Vernon's Annotated Civil Statutes, 1914, and was enacted in 1911. The above quoted provision of said article relied upon by appellant has remained in our statutes unchanged since its original enactment. The foregoing articles have never been repealed by legislative enactment making specific reference thereto.

In 1915, the legislature enacted, as a part of a comprehensive school law, Article 2681, Vernon's Annotated Civil Statutes, which in part provides: "The county school trustees are authorized to exercise the authority heretofore vested in the commissioners court with respect to subdividing the county into school districts, and making changes in school district lines." This language is broad and sweeping in its scope, and is free from ambiguity. Section 15 of this act, Acts 1915, c. 36, expressly repealed all conflicting laws.

In 1911, the Thirty-second Legislature (S.B. 178, Ch. 100, Gammel's General Laws, 1911) amended Chapter 12 of the act of the Thirty-first Legislature (1909) by adding thereto a section designated as 50a pertaining to county line school districts and empowering the commissioners' courts of each county having territory within the proposed district to create county line districts. In 1917, the Thirty-fifth Legislature (S.B. 250, Ch. 196, Gammel's General Laws of Texas, 1917) expressly amended section 50a above referred to and thereby made it the express duty of the county school trustees to create a common school district to contain territory in two or more counties. This amendatory act expressly repealed all laws in conflict therewith.

Article 2743, Vernon's Annotated Civil Statutes, vests in the boards of county school trustees in adjoining counties "full power and authority to create common school districts, to contain territories within two or more counties." This article further provides that "no common county line school district shall be created with or *changed* to a less area than nine square miles * * * (italics ours)." . Acts 1909, Ch. 17; Acts 1911, p. 200; Acts 1917, p. 441.

Article 2742f, sec. 1-a (Acts of 1929, 41st Leg., 1st C.S., c. 47, p. 106, as amended by Acts 1931, 42nd Leg., p. 235, Ch. 140, sec. 1), authorizes the county board of school trustees to detach territory from two or more districts and create a new district, and provides "that when the proposed new district will embrace territory lying in two or more counties, all orders affecting its establishment shall be concurred in by the County Board of Trustees of each county concerned."

As originally enacted (Acts of 1929 above cited), this article vested in the county board of trustees the power, on petition, to detach from and annex to any school district, territory contiguous to the common boundary line of the two districts. Section 3 of the act repealed all laws in conflict therewith. The emergency clause of the act is significant in that it states "there is an immediate and imperative need of a more practical method of providing for creation and change of school districts."

Said article was amended by Acts 1931, 42nd Leg., p. 235, Ch. 140, sec. 1 (H.B. 386) whereby the following provision,

among others, was added: "provided that when the proposed new district will embrace territory lying in two or more counties, all orders affecting its establishment shall be concurred in by the County Board of Trustees of each county concerned."

Article 2729a, Vernon's Annotated Statutes, (Acts 1927, 40th Leg., 1st C.S., p. 17, Ch. 7, sec. 1), provides (as was already provided by Article 2681, Vernon's Statutes, Acts of 1915, p. 71, 34th Leg., Ch. 36, and § 4): "The county school trustees of any organized county are authorized to exercise the authority heretofore vested in the Commissioners' Court with respect to subdividing the county into school districts and making changes in school district lines."

Article 2742e, sec. 2, Vernon's Annotated Statutes, provides that in the manner therein set forth, "the County Board of School Trustees in any county in this State shall have authority and full power to create Common School Districts, to subdivide districts, and to change boundary lines of any and all Common School Districts legally coming under the jurisdiction of the County Board of School Trustees * * *." Acts 1929, 41st Leg. 1st C.S., p. 259, Ch. 109. Although this act does not provide that all laws in conflict therewith are repealed, one of the reasons expressly assigned for passing it as an emergency measure was "the fact that the authority of the County Board of School Trustees to change boundary lines of Common School Districts, may be questioned."

Article 2742f, section 1, Vernon's Annotated Statutes, provides in part: "In each county of this State the County Board of School Trustees shall have the authority, when duly petitioned as herein provided, to detach from and annex to any school district territory contiguous to the common boundary line of the two districts; provided the Board of Trustees of the district to which the annexation is to be made approves * * *."

Section 2 of the article above mentioned reads: "Any outstanding indebtedness affected by changes in the boundary lines of school districts shall be adjusted by the County Board of [School] Trustees as provided in Sections 10, 11 and 12, of Chapter 84, Acts of the 40th Legislature, First Called Session." Acts 1929, 41st Leg., 1st C.S., 106.

■ Although Article 2744 as well as Articles 2741 and 2742, vesting in the commissioners' courts jurisdiction in respect to our school districts, have been for many years and are now carried forward in our statutes as a part of the body of our school laws, and stand unrepealed by express reference thereto in any legislative enactment coming under our observation, the provisions of each of said articles are in hopeless conflict with later legislation on the same subject.

This subsequent legislation constitutes a major part of the body of our present school law. A careful review of the above referred to acts, passed from time to time by our legislature subsequent to 1911, convinces us that it was the clearly expressed purpose and policy of our legislature to thereby vest, and that they did vest, in the county board of school trustees the powers and authority in said acts set forth, theretofore vested in the commissioners' court. We are of the opinion that this subsequent legislation must be given effect, in spite of the fact that it is in conflict with the provisions of Articles 2741, 2742 and 2744, even though the effect of this holding be that, as applied to the situation here presented, the three articles last mentioned are repealed by such later legislation. This conclusion, we think, is supported by the authorities cited.

County School Trustees of Runnels County v. State, Tex.Civ.App., 95 S.W.2d 1001, 1003, was a detachment and annexation of territory case involving a county line district. Although the court in that case refers to and quotes in part from Article 2744, it held that "it is fundamental that the county trustees of one county cannot alone create a district composed of territory lying in two counties; and as a practical matter it would follow that where a county line consolidated independent school district has been created by the joint action of both counties, it necessarily follows that that district cannot be abolished or changed except by the consent of the county school trustees of each county having territory contained therein."

As stated above, Article 2681, as amended in 1915, provides: "The county school trustees are authorized to exercise the authority heretofore vested in the commissioners court with respect to subdividing the county into school districts, and making changes in school district lines."

The foregoing article was construed in the case of Mathis v. Pritchard, Tex.Civ. App., 196 S.W. 623, 624, and in reference thereto the court said:

"The power of subdividing counties into convenient school districts and of altering the lines thereof and of consolidating districts already constituted was formerly vested in the county commissioners' courts. See Revised Statutes of 1911, Arts. 2815 [and] 2816. * * * The Legislature, however, by an act approved March 5, 1915 (see General Laws 34th Legislature, p. 68), provided (section 2) that the general management and control of public free schools in each county of the state should be vested in five county school trustees elected from the county at the time and in the manner pointed out in the act. It was then provided (section 4) that: 'The county school trustees are authorized to exercise the authority heretofore vested in the county commissioners' court with respect to subdividing the county into school districts, and to making changes in the school district lines.' "

In the case of State ex rel. Flores v. Bravo, County Judge, Tex.Civ.App., 162 S. W.2d 1052, 1054, it was held that "the only proper authority to lay out and establish a school district, or to alter the boundaries of same, was the County Board of School Trustees", and that the attempt by the commissioners' court of Zapata county to enlarge the boundaries of a common school district was void.

The case of Orange School Trustees of Orange County v. District Trustees of Prairie View Common School Dist. No. 8, 137 Tex. 125, 153 S.W.2d 434, involved the question of the detachment of territory from a common school district and annexing it to an independent school district. The Supreme Court held that the provisions of Section 2, Article 2742e, and Section 1, Article 2742f (both Acts of 1929, 41st Leg., 1st C.S., cc. 109, and 47), governed the case. In this connection it should be borne in mind that Section 1-a of Article 2742f provides "that when the proposed new district will embrace territory lying in two or more counties, all orders affecting its establishment shall be concurred in by the County Board of Trustees of each county concerned."

Appellant cites and relies on the case of Newsome v. Elliott, Tex.Civ.App., 139 S.W. 2d 221, 222, writ dismissed, correct judgment. The factual situation before the court was briefly: Talco Independent School District was a county line district composed of territory in both Franklin and Titus counties, the latter being the administrative county. Kinney Point Common School District No. 31 adjoined the Talco District and was located wholly within Franklin county. A majority of the qualified voters of the Kinney Point District presented a petition to the County Judge of Franklin County praying for the consolidation of their district with the Talco district, and that an election be ordered for that purpose. The County Judge refused to grant this petition, whereupon suit was filed praying that a writ of mandamus issue requiring the County Judge to order the election. The writ of mandamus issued as prayed for. On appeal it was contended that the trial court erred in issuing the writ of mandamus because appellees did not plead or prove that either the Commissioners' Court or the County Board of School Trustees of Titus or of Franklin county had consented to the proposed consolidation of Kinney Point and Talco districts.

Although the point raised on appeal, as above set forth, involved the want of consent of both the County Boards of School Trustees and of the Commissioners' Courts of said counties, the Court of Civil Appeals, in its opinion, said:

"The specific contention is that a county-line district, such as the Talco district, composed of territory lying in two counties, may not lawfully be *changed* by the addition, as here attempted, of territory to or by detaching territory from such county line district, without the consent of the Commissioners' Court of both such counties, as required by R.S. Article 2744, * * *."

This case does hold that the foregoing proposition, as stated by the court, is sound, and that it is necessary to comply with the provisions of Article 2744 by obtaining the consent of the commissioners court of each county having territory contained therein, to a proposed change of a county line district.

However, the court did not discuss in its opinion any of the relevant articles of the statutes hereinabove cited and quoted vesting authority in the county boards of school trustees; nor was the question presented as to whether the required consent should be from the commissioners court or from the county trustees. The issue presented to the court was the entire want of consent of any governing body from the other county to be affected. In its opinion the court cites the case of County School Trustees of Runnels County v. State, Tex.Civ.

App., 95 S.W.2d 1001. This case also involved the entire want of consent from the other county to be affected. However, in this last mentioned case the court does say Article 2742f (as is expressly provided therein) does not permit territory to be detached from a county line district without the consent and concurrent action of the trustees of each county having territory in such county line district.

In the case of Hunt v. Trimble, Tex.Civ. App., 145 S.W.2d 659, writ refused, the holding of the court in Newsome v. Elliott, supra, was discussed and criticized. We are inclined to agree with Judge Folley's conclusion as set forth on pages 662, 663 of the opinion in 145 S.W.2d, that the Supreme Court could, for the reasons stated, have decided that a correct judgment was rendered in the Newsome case without endorsing the holding of the court in reference to Article 2744. For each of the reasons above expressed, we are unwilling to recognize the Newsome case as authority for the proposition that Article 2744 vests in the commissioners' court exclusive jurisdiction over county line school districts.

Appellant's second point is that the order complained of is void because of the provision contained in Article 2744 forbidding the changing of county line districts until the bonded indebtedness of such district is paid. It was admitted that appellant County Line District did have an unsatisfied bonded indebtedness at all relevant times to this appeal, and that no order had been entered adjusting the indebtedness. In its answer, appellee stated that as soon as this litigation is terminated, it will proceed in the manner prescribed by law to adjust the bonded indebtedness in an equitable and proper manner as between the appellant District and the Clifton Independent School District.

In reference to the above mentioned provision of Article 2744, the court, in the case of County School Trustees of Runnels County v. State, Tex.Civ.App., 95 S. W.2d page 1003, said:

"However, other articles relating to the educational system have provided for the adjustment of outstanding bonded indebtedness, where the district voting them has been rearranged, and where territory has been either detached from or added to such district."

Article 2742b, Vernon's Annotated Civil Statutes, Sec. 9, is as follows:

"When the boundaries of any school district having outstanding bonded indebtedness have been changed or its territory divided or two or more of such districts consolidated, it shall be the duty of the County Board of Trustees to make such an adjustment of such indebtedness and district properties between the districts affected and between the territory divided, detached or added, as may be just and equitable, taking into consideration the value of school properties and the taxable wealth of the districts affected and the territory so divided, detached or added as the case may be. And when said Board has arrived at a satisfactory basis of such an adjustment, it shall have the power to make such orders in relation thereto as shall be conclusive and binding upon the districts and the territory thereby affected."

Sections 10, 11 and 12 of the same article (2742b) sets out the procedure as to ordering elections for refunding bonds and other details in carrying out the adjustment of the bonded indebtedness.

Article 2742f, in which Section 1 sets out the law and procedure under which the detachment and annexation in this instance was authorized, by the terms of section (2) thereof provides for adjustment of the bonded indebtedness and reads as follows:

"Any outstanding indebtedness affected by changes in the boundaries of school districts shall be adjusted by the County Board of Trustees as provided in Sections 10, 11 and 12, of Chapter 84, Acts of the 40th Legislature, First Called Session", which is Article 2742b referred to above.

Further reference to adjustment of bonded indebtedness is made by Section 3 of Article 2742c, Vernon's Annotated Statutes, giving the county board of school trustees authority to adjust such indebtedness.

We are of the opinion that appellant's second point is without merit. The provisions of Article 2744 prohibiting changes in county line districts have been superseded by the later legislative enactments above quoted. Although we are further of the opinion that the adjustment of appellant's indebtedness is a statutory duty, the failure to make such adjustment at the time the order here complained of was passed did not invalidate the order. Brownfield v. Tongate, Tex.Civ.App., 109 S.W.2d 352; Prosper Ind. School Dist. v. County School Trustees, Tex.Civ.App., 51 S.W.2d 748; Id., Tex.Com.App., 58 S.W.2d 5.

For the reasons above expressed, each of appellant's assignments of error is overruled, and the judgment of the trial court is affirmed.