The STATE of Texas ex rel. BECKVILLE INDEPENDENT SCHOOL DISTRICT, Appellant,

v.

TATUM INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 6825.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 13, 1955.

Rehearing Denied Nov. 10, 1955.

· J. C. Hinsley, Austin, H. H. Wellborn, Henderson, for appellant.

Waldrop, Shaw & Colley, Henderson, for appellee.

HALL, Chief Justice.

This action was instituted in the District Court of Rusk County by appellants, who were plaintiff and relator below, against appellee, who was respondent below, in the nature of a quo warranto proceeding, and had for its purpose the settling of a boundary dispute between the relator and respondent. The parties will be referred to here as the Beckville District, appellant, and the Tatum District, appellee. Both of said districts are independent school districts. The trial was before the court without a jury and resulted in judgment in favor of the Tatum District, fixing the line between the two districts as contended for by Tatum. The land in controversy amounts to about 735 acres.

Appellant brings forward eight points of error, the first six of which are briefed together. The first point asserts that the trial court erred in holding that the Tatum District, appellee, is legally authorized to exercise the corporate rights, franchises, powers and privileges conferred by law of said district in the territory in dispute as described in said judgment.

By point two it is asserted that the trial court erred in failing to render judgment that the Beckville District, appellant, had the same authority as set out above.

By point three appellants assert that the trial court erred in adjudging that the common boundary line between Beckville District and Tatum District is the line described in the court's order, which is the line contended for by Tatum District.

By point four it is asserted that the trial court erred in holding that the disputed territory is in the Tatum District.

By point five appellants contend that the court erred in not finding that the disputed territory was in the Beckville District.

By point six appellants assert that "the trial court erred in finding and holding that the boundaries of the original Beckville Rural High School District and the later Beckville Independent School District include the disputed territory through mistake and inadvertence or mistake or inadvertence."

Harris Chapel Common School District was created by the Commissioners' Court of Panola County in 1897. This district was divided in 1917, by order of the County School Board of Panola County in as near two equal portions as possible, creating thereby another common school district out of the Harris Chapel District No. 4, known as Alderbranch District No. 43. There is evidence that on November 24, 1919, the County Board of School Trustees of Panola County did, or attempted to, re-establish the line between Harris Chapel District No. 4 and Alderbranch District No. 43. On June 5, 1922, the County Board of School Trustees of Panola County made another attempt at re-defining or surveying a line between Alderbranch and Harris Chapel Districts. On July 10, 1922, the Commissioners Court of Panola County re-established the line between Harris Chapel District and Alderbranch District and authorized the Harris Chapel District to issue bonds for the erection of a school building. On October 22, 1928, the County Board of School Trustees of Panola County consolidated Beckville Rural High School District with Harris Chapel Common School District No. 4, at which time it is claimed that the dividing line between the two districts was established on the line now claimed by the appellant, Beckville District. In June 1931, an election was ordered by Panola County School Board to incorporate the Beckville School District as an Independent School District. In 1932 the County Judge of Panola County ordered an election in response to a petition by the patrons of Alderbranch Common School District for consolidation with Tatum Independent School District. In 1932 the Trustees of the Tatum Independent School District ordered an election in said district for the purpose of consolidating Tatum District with Alderbranch District No. 43. The facts are un-

disputed that at the time this suit was brought and for some years prior thereto, the Beckville District was comprised of several common school districts, one of which is Harris Chapel No. 4, and that the Tatum District, a county-line school district in Rusk and Panola Counties, is and has been for a number of years consolidated with the Alderbranch District which lies wholly in Panola County. The area in dispute lies between the Beckville and the Tatum districts on the line between the Harris Common School District and the Alderbranch Common School District, as they existed before consolidation with Beckville and Tatum.

The contention by appellant is that the Panola County School Board fixed the boundary line between these two districts on more than one occasion on the line as claimed by the Beckville District, and that the line contended for by appellee Tatum District was fixed by the Commissioners Court in 1922, which act appellant claims is void under the authority of R.C.S., Art. 2681.

The power of laying out school districts and fixing the boundaries between them rests now solely with the County Board of School Trustees. R.C.S. Art. 2681, Vernon's Ann.Civ.St. art. 2681; State ex rel. Flores v. Bravo, Tex.Civ. App., 162 S.W.2d 1052, wr. ref.

All the orders of the County School Board and the Commissioners Court of Panola County that could be found and parts of such orders were introduced in evidence, as well as testimony of several witnesses who testified to their knowledge respecting the School Board's orders fixing the line, and the location of the line on the ground. As heretofore alluded to, Harris Chapel Common School District in 1922 voted a $2,000 bond issue with which to erect a frame school building. To facilitate this, it appears that the Commissioners Court by its order on July 10, 1922, ordered the line between Harris Chapel and Alderbranch to be re-surveyed. This order of the Commissioners Court was carried out, the line was re-surveyed and the map showing the survey found its way to the Comptroller's Office in Austin.

The trial court found in his findings of fact under sub-heads 5 and 6 of No. 9, and Nos. 10 and 11:

"5. That the Trustees of said Harris Chapel Common School District No. 4 and the Trustees of Alderbranch Common School District No. 43 had agreed upon a location of the common boundary line between their respective districts, and that such agreement should be recognized and confirmed by said Board and that the line should be established in accordance with the agreement had by and between the Trustees of said Districts.

"6. That said boundary line dispute between Harris Chapel Common School District No. 4 and Alderbranch Common School District No. 43 should be settled and the common boundary line between said Districts should be definitely established before the issuance of the contemplated bonds by the Harris Chapel Common School District No. 4.

"10. That the map attached to and being a part of Defendant's Exhibit No. 15, and which shows to have been made by Lester Davis, County Surveyor of Panola County, Texas, and certified by him on June 26, 1922 to be true and correct, was made by him on the Orders of the Board of County School Trustees of Panola County as contained in said Board's Minutes of June 5, 1922, and that in the making of said map said County Surveyor did survey or otherwise ascertain and locate the dividing line or common boundary line between Harris Chapel Common School District No. 4 and Alderbranch Common School District No. 43 in accordance with the agreement of the Trustees of said Districts, and as he was ordered to establish said boundary line by said County Board; that said map and the survey from which it was made was in fact approved and recognized by the

Board of County School Trustees of Panola County, Texas, the Commissioners Court of Panola County, Texas, the Attorney General of Texas, the State Comptroller, the Trustees of both the Harris Chapel Common School District No. 4 and the Alderbranch Common School District No. 43, and reveals the true boundary line between said Districts, and places the disputed area in the Alderbranch Common School District No. 43.

"11. That from and after the Meeting of the Board of County School Trustees of Panola County held on June 5, 1922, the Trustees of Harris Chapel Common School District No. 4 and Alderbranch Common School District No. 43, respectively, recognized that a part of the Common Boundary line ran along with and followed the Yellow Jacket Road and acted accordingly in taking the school census and in the administration of school affairs thereafter."

The record of the School Board of Panola County of June 4, 1917, shows that the survey of R. E. Lawrence, County Surveyor, showing division of District No. 4, Harris Chapel, so as to create a new district to be known as District No. 43 (Alderbranch District). The trial court in his finding of fact No. 6 found that "the reference to 'Book No. 1, page 21, Record of School Districts' was a reference to a purported order of the Board of County School Trustees of Panola County, Texas, purported to have been held on November 21, 1919, and was beyond a doubt placed on the minutes of June 4, 1917 meeting of said Board at some time subsequent to November 24, 1919, and perhaps at a time subsequent to December 18, 1928."

The trial court was justified in making the above finding from the face of such orders taken together with the testimony of witnesses who knew the dividing line between Districts Nos. 4 and 43. Some of these witnesses were school trustees of the districts involved, and at least one of them had served on the County School Board during the time some of these purported orders were made. These witnesses testified that the dividing line between said districts ran along the Yellow Jacket Road; and, furthermore, that they had never heard of the above-mentioned orders purporting to change the line from the Yellow Jacket Road. On June 6, 1922, Lester Davis, County Surveyor, established the line between the two districts. Undoubtedly this is the line agreed to by the Trustees of the two districts, Nos. 4 and 43, and places the territory within the boundaries of Alderbranch District No. 43. On June 5, 1922, the County Board of Panola County ordered Harris Chapel Common School District resurveyed and map made of same. At the same time "the Board ordered that the dividing line between Alderbranch and Harris Chapel Districts be surveyed and established as agreed to by the Trustees of the said Districts."

■ There were other persons who took the scholastic census in the districts and drove the school bus who testified that the dividing line between the Districts No. 4 and No. 43 had always run along the Yellow Jacket Road. There is the circumstance, practically undisputed, that from and after the reorganization of these two districts up to about 1950 or 1951, a part of the dividing line between them had been recognized as the Yellow Jacket Road. Taxes have been assessed and paid; scholastic census and school buses operated on this basis. While it is true that such a recognition alone would not be sufficient to establish a dividing line between the two districts, it is certainly a strong circumstance when taken with the other evidence shown by this record showing the location of the dividing line, a part of which being the Yellow Jacket Road. These facts and circumstances together with the questionable manner in which the records of the school boards were kept were sufficient to raise an issue of fact; and in our opinion, sustain the judgment of the trial court placing the disputed territory in the appellee district. Trustees of Dover Common School District v. Dawson I. S. D., Tex.Civ.App., 223 S.W. 556.

With respect to the entry of the purported order of the School Board of Panola County on October 22, 1928, the trial court concluded that:

"The disputed area being a part of the Alberbranch Common School District No. 43 at the time of entry on October 22, 1928, of the County Board of School Trustees Order establishing Beckville Rural Highschool District, the inclusion of the disputed area within the description of the field notes description of said rural highschool district by mistake and inadvertence or by the arbitrary act of some interested person did not alter the status of the disputed area as a part of the Alderbranch Common School District No. 43 and the same is true with reference to the subsequent actions had in connection with the incorporation of the Beckville Independent School District in 1931."

The preponderance of the evidence amply supports the above conclusion. Mercantile & Banking Co. v. Landa, Tex. Civ.App., 40 S.W. 406; Gulf C. & S. F. Ry. v. Brooks, 63 Tex.Civ.App. 231, 132 S.W. 95; Friemel v. Coker, Tex.Civ.App., 218 S.W. 1105. There is no evidence that since the division of Harris Chapel District No. 4 creating Alderbranch District No. 43 any scholastics living in this disputed territory have attended Harris Chapel School or Beckville Rural High School except by transfer. No other district ever took the scholastic census or operated school buses in this area until about 1950 or 1951. It is apparent from the record that all parties at interest recognized the line as fixed by Lester Davis, approved by the County School Board, and which corresponds with the line fixed by the Panola County Commissioners Court on July 10, 1922, upon which the Harris Chapel school house bonds were approved by the State Attorney General and the Comptroller. Insofar as the record reveals, no taxes were ever levied against and paid by this disputed area to retire said bonds.

■ Another reason, we think, for holding the purported order of the Panola County School Board of 1928 invalid is the fact that there is no showing that it was entered after notice was given to the Alderbranch Common School District. By act of the 40th Legislature in 1927, 1st Called Sess., c. 84, Sec. 4, it was provided: "* * * no Common School District shall be encroached upon or reduced in area except by majority vote of the qualified voters of such Common School District." The 41st Legislature enacted Article 2742e, Sec. 2, which provided that before any changes in the lines of common school districts, the trustees of the common school districts affected shall be notified to appear before the County Board for a hearing. We have found nothing in this record that shows any notice of election in Alderbranch Common School District or any election held in response to an election order in compliance with the first Act above, nor was any notice given to its trustees of any proposed change in its boundary lines in accordance with the second Act noted above. The first Act copied above was in force when the supposed order of the County School Board was made fixing the boundary line between Beckville District and Alderbranch Common School District which took away the territory here in dispute. In Board of School Trustees v. Bullock Common School District, 55 S.W.2d 538, 540, by the Commission of Appeals, it is said:

"So construing said acts together leads to the conclusion that the Legislature intended the provision for notice and hearing, contained in section 2 of House Bill 220, to operate as a limitation of the authority conferred on the county board by the other act, so far as a change in the boundary lines of a common school district is involved. Compliance with said provision was prerequisite to the exercise, by the county board of school trustees of Young county, of authority to change the boundary lines of the Bullock common school district; and, since there was no such compliance, the

order for such change was unauthorized and therefore is invalid."

■ That case is conclusive of the fact that where no notice in the change of a boundary line in a common school district is given to its trustees, any change in its boundaries is unauthorized and invalid. Therefore, if any change were made in the boundary lines of Alderbranch District by the County School Board of Panola County, such act was certainly unauthorized and invalid. See also Blackburn v. State ex rel. Echols, Tex.Civ.App., 72 S.W.2d 627; County School Trustees of Orange Co. v. District Trustees of Prairie View Common School District, 137 Tex. 125, 153 S.W.2d 434. This case must be governed by Sec. 2, Art. 2742e, Acts 1929, 41st Leg., 1st C.S., p. 259, ch. 109, and by Sec. 1 of Art. 2742f, Acts 1929, 41st Leg., 1st C.S., p. 106, ch. 47, construed together.

■ Appellant cites the case of Banquete Independent School Dist. v. Agua Dulce I. S. D., Tex.Civ.App., 241 S.W.2d 192, as authority for the proposition that no notice is required for changing the lines of school districts. The question under consideration in the above case was with respect to changing the boundary lines of independent school districts and not common school districts, and for that and other reasons is not applicable to the question here. We agree with the conclusion reached in that case; but when a common school district is involved and the County Board of Trustees seeks to diminish it by changing its boundaries, notice is required to the common school district Board of Trustees to appear before the County Board of Trustees before the County Board's action would be valid and binding on the school district.

■ As heretofore pointed out, the actual consolidation of Alderbranch Common School District with the Tatum District was effected in the following manner: In 1932 Alderbranch District petitioned the County Judge of Panola County to call an election in its district to determine whether Alderbranch should be consolidated with the county-line Tatum District and for the assumption of certain indebtedness. On the same date the County Judge of Panola County ordered said election in the Alderbranch District "as heretofore defined and designated by an order of the Commissioners Court of Panola County, Texas, which said order is duly recorded in the minutes of the Commission's records in said County." Said election was held, votes canvassed, and results declared in favor of consolidation with the Tatum District. On the same date, the Tatum School Board was presented a petition for the purpose of its consolidation with the Alderbranch District and assumption of indebtedness. In response to said petition the Tatum Board of Trustees ordered an election which resulted in a vote favorable to consolidation with Alderbranch. In June 1932 the two districts were declared to be consolidated, together with the assumption of a part of the Alderbranch District's indebtedness by the Tatum District. The Tatum School Board had no authority to call an election for its consolidation with the Alderbranch District; however, this unauthorized act was validated in 1937 by an Act of the 45th Legislature, Sec. 1, Art. 2806b, Vernon's Rev.Civ.St.R.S. of Texas, reading as follows:

"All county line independent school districts in this State heretofore attempted to be organized and established, and now functioning as such, and recognized by either State or county authorities as such school districts, and which were attempted to be organized and established by a vote of the people at an election held in each district affected for the purpose of consolidating an existing county line independent school district with an existing contiguous common school district, and at which election there was an affirmative vote in each school district in favor of such consolidation, are hereby validated in all respects, as though such district or districts had been duly and legally established in the first instance, notwithstanding the fact that such election on the question of consolidation so held in such existing independent school district or districts

may have been ordered, notices thereof given, and the results thereof declared by a Board of Trustees of such existing county line independent school district or districts instead of by the Commissioners Court as provided by Article 2806 of the Revised Civil Statutes of Texas, of 1925."

It is our opinion that the trial court upon sufficient evidence correctly concluded that the true boundary line between the Beckville District and the Tatum District runs along the Yellow Jacket Road and that the disputed territory lies within the boundary of the Tatum District.

All other points not discussed herein are respectfully overruled.

Judgment of the trial court is affirmed.