**PROSPER INDEPENDENT SCHOOL DISTRICT, et al., Appellants,**

**v.**

**CENTRAL EDUCATION AGENCY, Collin County Commissioners Court, McKinney Independent School District and Bill H. Terrell, Appellees.**

No. 3–90–095–CV.

Court of Appeals of Texas, Austin.

Nov. 28, 1990.

Rehearing Overruled Jan. 9, 1991.

Robert E. Luna, Law Offices of Earl Luna, P.C., Dallas, for appellants.

Anne E. Swenson, Asst. Atty. Gen., C. Robert Heath, Bickerstaff, Heath & Smiley, Austin, for appellees.

Before POWERS, GAMMAGE and CARROLL, JJ.

CARROLL, Justice.

School district appeals the district court's affirmance of a detachment order. We will affirm the judgment of the district court.

## BACKGROUND

Prosper Independent School District seeks to retain a portion of its territory, against the wishes of the territory's residents.

In 1986, a majority of the registered voters in a 1200–acre section of Collin County petitioned the Collin County Commissioners Court (the "county commissioners"), requesting that their property be detached from Prosper and annexed to McKinney Independent School District. The county commissioners granted the petition over Prosper's objection. Prosper appealed to the state commissioner of education (the "state commissioner"), pursuant to Tex. Educ.Code Ann. §§ 11.13(a) and 19.009(a) (Supp.1990). The state commissioner affirmed. Prosper then sued for judicial review in the Travis County District Court, which also affirmed.

As to substantive matters, Prosper contends that the detachment: (1) encompasses land not contiguous to McKinney; (2) adversely affects racial diversity at Prosper and McKinney; and (3) significantly reduces Prosper's tax revenues. As to procedural issues, Prosper complains that the county commissioners have not allocated any of its indebtedness to McKinney and that McKinney did not properly approve the annexation. Finally, Prosper argues that the county commissioners acted in bad faith. We will address each of these arguments in turn.

## DISCUSSION AND HOLDINGS

A. Contiguity

Prosper contends that the district court erred because part of the subject territory is not contiguous to McKinney. We disagree.

Detachment and annexation of school districts is controlled by Tex.Educ. Code Ann. § 19.022 (Supp.1990). Section 19.022(a) provides that territory may be detached from one school district and annexed to another school district that is *"contiguous* to the detached territory." (Emphasis added). Territories are "contiguous" if they may be included in a common boundary line, without any intervening spaces. *Joaquin Indep. School Dist. v. Fincher*, 510 S.W.2d 98, 103 (Tex.Civ.App. 1974, writ ref'd n.r.e.) (construing meaning of "contiguity" under former § 19.231, 1969 Tex.Gen.Laws, ch. 889, § 1, at 2878 [Tex.Educ.Code § 19.231, since revised as Tex.Educ.Code Ann. § 19.051 (Supp. 1990)]). In this case, the entire territory covered by the detachment order may be included in a common boundary line with McKinney without any intervening spaces. Therefore, the territory is contiguous to McKinney.

Prosper concedes that the territory, *taken as a whole,* is contiguous with McKinney. Prosper contends, however, that the territory cannot properly be treated as a unit because it is composed of three distinct tracts: two residential tracts con-

nected by a nonresidential tract. Since one of the residential tracts does not abut McKinney, Prosper contends, that tract is not "contiguous" to McKinney. Prosper further asserts that, at least in this case, the tracts may not be grouped to satisfy the statutory contiguity requirement.

■ No Texas law forbids the grouping of tracts such as these to establish contiguity. Rather, the county commissioners were vested with broad discretion to transfer territories between school districts, subject only to the minimum statutory requirements. *Central Educ. Agency v. Upshur County Comm'rs Court,* 731 S.W.2d 559, 561 (Tex.1987).

■ Prosper's sole support for its theory is an order of the state commissioner of education which requires a residential tract to have a "legitimate interest" in an uninhabited tract before the two may be grouped to satisfy contiguity requirements. We are not, however, bound by a decision of the state commissioner. *See Barstow v. State,* 742 S.W.2d 495, 501 n. 2 (Tex.App. 1987, writ den'd). Moreover, we question the validity of the state commissioner's rule since the supreme court recently held that the state commissioner may not apply to territory transfers requirements not found in section 19.022. *Upshur,* 731 S.W.2d at 561 (state commissioner of education could not reverse county commissioners' detachment order solely because residents were seeking detachment to obtain lower school taxes). We hold that the county commissioners could treat the tracts as a unit for the purposes of deciding the annexation and detachment petition.

B.  Racial Diversity

■ Prosper claims that the detachment is invalid because it will have a significant adverse impact on racial diversity in Prosper and McKinney. Specifically, Prosper argues that the detachment violates an order requiring the state commissioner of education to study the impact of a territory transfer on desegregation of the school

districts involved. *See United States v. Texas,* Civ. No. 5281 (E.D.Tex. July 13, 1971) (reprinted at 441 F.2d 441, 444 (2d Cir.1971)).

■ We do not agree with Prosper's contention. Prosper's argument does not relate to any state law requirements. Rather, it is an attempt to obtain collateral enforcement of a federal order. This court is not required to follow and enforce an order of a United States District Court. *Omniphone, Inc. v. Southwestern Bell Telephone Co.,* 742 S.W.2d 523, 526 n. 3 (Tex.App.1987, no writ); *Barstow,* 742 S.W.2d at 501 n. 2.

Moreover, the record in this case establishes that the detachment would have a negligible effect on the racial compositions of Prosper and McKinney. The county commissioners found that detachment would increase Prosper's minority student population, which is Hispanic only, from 14.88% to 15.83%, or less than one percent. The county commissioners further found that students who transfer from Prosper to McKinney would enter a more racially diverse environment. McKinney has a 34.27% minority population, which includes members of several ethnic groups. We hold that the evidence establishes that the detachment would not have a significant, adverse effect on racial diversity in Prosper and McKinney.

C.  Prosper's Tax Revenues

■ Prosper complains that the county commissioners' finding as to the effect of detachment on Prosper's tax revenues is not supported by substantial evidence.[1] Specifically, Prosper contends that the evidence conclusively demonstrates that detachment will result in an enormous loss to Prosper's tax revenues. We disagree.

Tex.Educ.Code Ann. § 19.022(g) (Supp. 1990) requires county commissioners to consider the social, economic, and educational effects of a proposed boundary change before granting a detachment peti-

1.  In reviewing a substantial evidence point, we are concerned not with the *correctness* of the administrative order, but with its *reasonable-*

*ness. Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984).

tion. Prosper apparently argues that the detachment will have an adverse economic and educational effect because it will greatly reduce Prosper's tax revenues.

The evidence as to the effect of detachment on Prosper's tax revenues is conflicting. In support of detachment, McKinney offered the testimony of an educational consultant who studied the fiscal effect of detachment on Prosper and concluded that it would be negligible. McKinney further presented evidence that Prosper would lose 13.6% of its students, but only 8.71% of its taxable property. This indicates that Prosper's "taxable value per student" would actually increase. Prosper's experts, on the other hand, testified that detachment would result in a loss of property valued at $12 million, and a potential future loss of $4 million in annual tax revenues.

This great disparity is easily explained. The nonresidential tract in the territory involved is currently classified as agricultural land, and valued for tax purposes accordingly. However, this land is slated for commercial development, which would substantially increase its tax value. Thus, while the current effect of the detachment may be negligible, the future effect could be significant.

■ The county commissioners reasonably concluded from the above evidence that the detachment would not significantly and adversely impact Prosper's tax base. In this regard, it is important to note that Prosper's figures were based on projections of the nonresidential tract's potential tax value, fifteen to twenty years from now. These figures are highly speculative. The county commissioners reasonably disregarded the evidence of potential revenues and opted to place significance on the evidence of current tax values. We hold, therefore, that the county commissioners' finding as to the effect of detachment on Prosper's tax base is supported by substantial evidence.

**D. Allocation of Indebtedness**

■ Prosper complains that the detachment order failed to allocate Prosper's indebtedness between Prosper and McKin-ney. The county commissioners' order states that "the allocation of the indebtedness of the two districts ... is intentionally not made a part of this Judgment, but shall be forthcoming from this Court within a reasonable period of time." The state commissioner specifically approved of this aspect of the detachment order. Prosper maintains that the county commissioners erred by failing to allocate the indebtedness in their original order, or within a reasonable time after the order was issued. We disagree.

■ Section 19.022(h) requires the allocation of the indebtedness of the district from which the territory is to be detached to the receiving district. Tex.Educ.Code Ann. § 19.004 (Supp.1990). But, this does not mean that county commissioners must allocate the indebtedness in the detachment order. In fact, they may reserve that determination for a future date. *Trustees of Cranfills Gap Consol. School Dist. v. Board of County School Trustees*, 178 S.W.2d 537, 541 (Tex.Civ.App.1944, writ ref'd); *Prosper Indep. School Dist. v. Collin County School Trustees*, 51 S.W.2d 748, 750 (Tex.Civ.App.1932), *aff'd*, 58 S.W.2d 5 (Tex.Com.App.1933) (*"Prosper I"*).

The detachment order in *Prosper I* stated that "this order is made subject for [sic] the right of the County Board of Trustees to make any lawful adjustment of any outstanding indebtedness of said districts ... at such future time as the board may see fit to determine the matter and enter necessary orders." 51 S.W.2d at 749. The *Prosper I* court held that the detachment was valid even though the county commissioners did not allocate the indebtedness at the same time that they approved the detachment. 51 S.W.2d at 750. Similarly, we hold that the detachment order in this case is valid.

■ We will not address Prosper's contention that the county commissioners have violated their goal of allocating the indebtedness within a "reasonable time." Prosper is improperly raising this point on appeal, without having sought relief from the

county commissioners, the state commissioner, and the district court. Prosper must exhaust its administrative remedies before seeking relief in this court. Tex. Civ.Stat.Ann. art. 6252–13a, § 19(a) (Supp. 1990).

■ We further disagree with Prosper's contention that a subsequent allocation of indebtedness would not be appealable. Clearly, Prosper would be entitled to an appeal of the commissioners order just as Prosper is entitled to an appeal of any other final administrative order.

E. Approval of the Annexation

■ Prosper next complains that the state commissioner's finding of fact number 4 is "contrary to the evidence." Finding of fact number 4 states that "the territory described by the detachment and annexation petition was the same territory as that approved for proposed annexation by the McKinney trustees." The McKinney board approved the annexation on June 19, 1986, and then ratified that decision on October 31, 1986. Apparently, Prosper's complaint is that the McKinney board did not approve a metes and bounds description of the territory, and that the territory it did approve differed from that described in the petition. Prosper's contentions lack merit.

■ First, a receiving board is not required to approve a metes and bounds description in connection with an annexation proceeding. The version of section 19.022(c) in effect at the relevant time states that a "proposed annexation must be approved by a majority of the board of trustees of the receiving district." 1983 Tex.Gen.Laws ch. 285, § 1, at 1386 [Tex. Educ.Code § 19.022(c), since amended].

This section makes no mention of a metes and bounds description. Therefore, the plain language of the statute requires only that the receiving board approve the *fact* of annexation.[2]

Second, a receiving board is not required to approve a specific territory in connection with an annexation proceeding. This is a corollary of the rule regarding metes and bounds. The plain language of the statute does not in any way require a receiving board to address a territory description. Because the receiving board is required to approve only the *fact* of annexation, we do not find any significance in Prosper's allegation regarding finding of fact number 4.

Third, even if a receiving district must approve a territory description, substantial evidence exists to support the finding of fact. The only support for Prosper's contention is the fact that the McKinney board did not have a metes and bounds description in front of it on June 19, 1986, when it first voted on the annexation. However, on October 31, 1986, when the board ratified its June 19th decision, it did have a correct metes and bounds description. Moreover, the McKinney board specifically proclaimed in the ratification that the territory it considered was the same as that considered on June 19th. Therefore, the McKinney board did eventually approve the annexation of the same territory as that described in the petition.

■ Finally, we do not agree with Prosper's related contention that the McKinney board exceeded its authority in approving the annexation because of the variance in the territory descriptions. As discussed above, the McKinney board was not required to approve a specific territory de-

---

**2.** The legislature amended section 19.022(a), effective August 31, 1987, to require that a petition requesting detachment and annexation be presented to the board of trustees of both districts. 1987 Tex.Gen.Laws, ch. 795, § 3, at 2784 [Tex.Educ.Code Ann. § 19.022(a) (Supp.1990)]. Section 19.022(b)(2) requires that an annexation and detachment petition contain a metes and bounds description of the subject territory. Tex.Educ.Code Ann. § 19.022(b)(2) (Supp.1990). Thus, in the future, school boards must necessarily approve a metes and bounds description.

Section 8 of the amendatory act makes this change applicable only to boundary changes initiated on or after June 1, 1987. 1987 Tex. Gen.Laws, ch. 795, § 8, at 2784. With exceptions not applicable here, prior law governs changes initiated before that date. *Id.* The boundary change in this case was initiated in 1986, before the amendment. Therefore, this case is governed by prior law.

scription and, even if it were so required, it did eventually approve an accurate description.

### F. Alleged Bad Faith of the Commissioners

■ Finally, Prosper alleges that the trial court erred in upholding the detachment because the county commissioners acted in bad faith. We disagree.

■ A detachment order may be overturned only if the county commissioners' decision was tainted by fraud, bad faith, or abuse of discretion, or if the decision is not supported by substantial evidence. *Central Educ. Agency v. Upshur County Comm'rs Court*, 731 S.W.2d 559, 561 (Tex. 1987). Prosper apparently bases its allegation of bad faith on the undisputed fact that the commissioners took an informal preliminary vote before the public meeting on the detachment and annexation petition. Prosper fails to cite any authority for its contention that the preliminary vote establishes bad faith. Accordingly, this point of error is waived. *Rayburn v. Giles*, 182 S.W.2d 9, 13 (Tex.Civ.App.1944, writ ref'd).

■ Moreover, even if Prosper had not waived this point, we do not agree that the mere taking of a preliminary vote is evidence of bad faith or that it otherwise tainted the decision-making process. *See Board of Trustees v. Cox Enterprises, Inc.*, 679 S.W.2d 86, 89–90 (Tex.App.1984), *aff'd in part, rev'd in part on other grounds*, 706 S.W.2d 956 (Tex.1986); *Rock Island Indep. School Dist. v. Colorado County Bd. of School Trustees*, 423 S.W.2d 665, 671 (Tex.Civ.App.1968, writ ref'd n.r.e.) (holding that prior agreement between county commissioners did not disqualify them from participating in vote on annexation petition).

### CONCLUSION

In summary, we conclude that the trial court correctly affirmed the order of the commissioner of education. We overrule all of Prosper's points of error and affirm the judgment of the trial court.

GAMMAGE, J., not participating.