## A. C. Overt v. The State.

No. 8578.    Decided April 2, 1924.

### 1.—Net Container Act—Constitutional Law.

The Net Container Act, Chapter 53, Acts First, Second, and Third Called Sessions of the Thirty-eighth Legislature is unconstitutional and void, because the same is practically incapable of enforcement, and harsh and oppressive.

### 2.—Same—Police Power—Public Health, etc., Not Involved.

The makers and sellers of flour, meal, rice, peas, beans, dried fruits, cereals, etc., such as are ordinarily sold in packages and sacks, and which are within common knowledge subject to variations in weight, dependent on climatic and atmospheric conditions, can not be penalized for selling,

offering, or exposing for sale in packages when the net weight of the pack·age is not plainly and accurately marked thereon, and such a law which attempts to do so is harsh, oppressive ,and practically incapable of enforcement and unconstitutional.

### 3—Same—Invalid Law.

The Act is also vague, indefinte, and of doubtful construction and therefore obnoxious to the terms of articles 2 and 6 of the Penal Code.

### 4.—Same—Invalidity of Law—Person—Corporation, etc.

Section 7 of said Act penalizes any person, and section 9 of said Act provides that within the term person is included any firm, company, co-partnership, corporation, association, or organization, joint stock companies, receivers and disbursing agents, and all officers, directors, and managers of such concerns, is also practically unenforcible and must be held unreasonable, indefinite, and of doubtful construction, and it must therefore be held that the material parts of this Act are unintelligible, harsh, oppressive, incapable of enforcement and deprive citizens of property without due process of law. Following: Ex Parte Roquemore, 60 Texas Crim. Rep., 287, and other cases.

### 5.—Same—Penal Law—Doubtful Construction.

Article 6 of the Penal Code declares inoperative any penal law which is so indefinitely framed or of such doubtful construction as that it cannot be understood either from the language in which it is expressed, or from some other written law of the State, to which attention is hereby called.

Appeal from the County Court of Grayson. Tried below before the Honorable R. M. Carter.

Appeal from a conviction of a violation of the Net Container Act; penalty, a fine of $25.00

The opinion states the case.

*Charles L. Black,* and *Head, Dillard, Smith, Maxey & Head,* for appellant.—Cited: James v. Bowman, 190 U. S., 127; Ex Parte Massey, 92 S. W. Rep., 1086; Butts v. Merchants Transportation Co., 230 U. S., 126; Sella Commission Co. v. Bolinger, 147 Federal, 419; U. S. v. Steffen, 100 U. S., 82; Hill v. Wallace, 259 U. S., 44; Snider v. State, 230 id., 146; Griffin v. State, 218 id., 494; Fowler v. State, 196 id., 951; Augustine v. State, 52 id., 77; Ex Parte Marshall, 161 id., 112; Ex Parte Slaughter, 243 id., 478; U. S. v. Cohen Grocery Co., 255 U. S., 81; Dorsey v. State, 38 Texas Crim. Rep., 527; Cooper v. State, 25 Texas Crim. App., 530; U. S. v. Reese, 92 U. S., 204; M. P. Rye Co., v. Tucker, 230 U. S., 340; G. C. & S. F. Ry. Co. v. Ellis, 70 Texas, 307; G. C. & S. F. Ry. Co., v. State, 120 S. W. Rep., 1028; Jordan v. State, 51 Texas Crim. Rep., 531, and cases cited in the opinion.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, Judge.—From a conviction in the County Court of Grayson County under what may be called the Net Container Act, Chapter 53, Acts First, Second and Third Called Sessions of the thirty-eighth Legislature, appellant brings this case on appeal before us.

The chief contention rests upon an attack upon the constitutionality of said law, various grounds being set up, all of which will not be discussed or set forth, but we confine ourselves only to such questions as may be necessary to dipose of the appeal.

One of the grounds of complaint is that the law as written is oppressive and practically incapable of enforcement. It was held by the Supreme Court of this State in M. K. & T. Ry. Co. v. State, 100 Texas, 420, that a law which was harsh and oppressive and incapable of enforcement was unconstitutional. This case has been followed by others. To understand the facts herein it is necessary to set same out to some extent. We quote:                    ,

"On the 25th day of January, 1924, in the County of Grayson and State of Texas, the defendant, A. C. Overt, was manager of the Diamond Mill & Elevator Company, a corporation duly incorporated and having its mill and place of business in Grayson County, Texas. As such manager he was engaged in manufacturing flour out of wheat and had charge of packing the same in sacks, and of selling and exposing the same for sale in such sacks; that he took a 48-pound sack with ''48 lbs. net weight'' printed on the outside of it, packed it with flour about the 2d day January, 1924; that at the time he packed it it was standard flour and the sack contained exactly 48 pounds net, that is, it contained exactly 48 pounds in addition to the weight of the sack in which it was packed; that the sack was packed by an automatic packer which is reasonably accurate, but after it was packed defendant, Overt, placed it on the scales and added to and took from the contents with a little scoop until the scales stood at an exact balance when they were registered at 48 pounds in addition to the weight of the sack; that the devices used for weighing the sack of flour were accurate and new and were the best devices used in the packing of flour; that after the sack was packed it was removed to the warehouse of the Diamond Mill & Elevator which is perfectly dry; that at the time charged in the information the sack was exposed in the warehouse for sale and was sold to C. D. Pierce by the defendant; that at the time it was sold it weighed 47 pounds and 9 ounces, in addition to the weight of the sack; that at the time the flour contained in the sack was manufactured and packed the flour contained $13\frac{1}{2}\%$ moisture; that at the time it was sold $1\%$ of the moisture in the sack had evaporated as determined by chemical analysis; that $1\%$ of the moisture in a 48-pound sack of flour amounts to 7. 68 ounces; that while $1\%$ of the moisture in the sack had evaporated the sack contained the same

food value as if the 1% of moisture had been present in the sack at the time of the sale.

Wheat and flour produced therefrom contain as an element in their compound certain moisture. It is necessary in the proper milling of wheat and the manufacture of the best grades of flour that the wheat at the time it is milled shall contain sufficient moisture to toughen the bran or covering thereon, for unless the same contains moisture the bran or outer covering of the grains of wheat is so brittle that it is impossible to mill and make from wheat first class flour, for when the dry wheat is crushed bran is crushed and it becomes mixed with the flour. It is necessary that wheat should contain such moisture, and it is the universal custom of the millers of the United State, approved by the National Department of Agriculture, that wheat shall contain such moisture and produce as a standard flour a flour containing not over 13½% of moisture. Under the provisions of Secs. 8719 and 8724, U. S. Comp. Stats. the Department of Agriculture in Circular 136, entitled, 'Standards of Purity for Food Products,' issued at Washington, D. C., May 14, 1919, by D. F. Houston, Secretary of Agriculture, it is provided:

'3. Flour is the fine, clean, sound product made by bolting wheat meal, and contains not more than 13½% of moisture, not less than 1.25% of nitrogen, not more than 1% of ash, and not more than ½% of fiber.'

Under the provisions of Art. 4582, R. S., in the Thirteenth Annual Report of the Dairy & Food Commissioner of Texas, dated August 31, 1921, it is provided:

'3. Flour is the fine, clean, sound product made by bolting wheat meal, and contains not more than 13½% of moisture, not less than 1.25% of nitrogen, not more than 1% of ash, and not more than ½% of fiber.'

And this standard is recognized as the universal standard of flour throughout the United States.

Flour is porous in character and after the same is made is subject to loss and gain in its moisture content, due to its being kept in a dry or moist place, and due to climatic conditions. If flour is exposed to a damp atmosphere it will absorb moisture and gain in weight, and if exposed to a dry climate the moisture therein will evaporate, with a corresponding loss in weight, and while this loss of moisture will be accompanied by a corresponding loss in weight, a sack of flour that is light in weight by reason of a loss of moisture contains as much food value as a sack of standard flour of full weight. In addition to moisture there are other causes that contribute to small variations in weight of flour. The mechanical devices used for weighing, like other devices in practical use, are not absolutely accurate. Capable employes are incapable of weighing large

numbers of sacks of flour with absolute precision, and in moving and transferring flour some is wasted from the packages.

Under the provisions of Sec. 8907e, U. S. Comp. Stats., the National Bureau of Standards is authorized to promulgate rules establishing reasonable variations which shall be permitted and tolerances allowed in the enforcement of laws as to weighing articles of commerce.

In Circular No. 61 of the Bureau of Standards specifications and tolerances of weights and measures, and weighing and measuring devices, of date August 31, 1920, provision is made for such tolerances. Provision is made for tolerances in the ratio of the weight of the commodity on the scales to the counterpoise balance, for inaccuracies in the notches or graduations on the beam, for inaccuracies in the counterpoise weight or balance, for inaccuracies in the manipulation of scales by reason of the inability to determine with accuracy when the scales are on an exact balance, for the inability to cause the commodity weighed to conform to the lowest graduation on the beam, for the sensibility of the scales. These are embraced both in the weighing of the tares, or sacks in which flour is contained, and the gross of the flour in the sack. Under these tolerances the amount of variation permitted in good commercial weighing is as follows: For commodities weighing from 25 to 50 pounds platform scales are prescribed of 500 pounds capacity, with a beam of a ratio of 50 to 1, with a beam graduation of four ounces, and the maximum allowance of tolerance in weight under these rules for a 25 pound package is 7.49 ounces, and for a 50 pound package 7.73 ounces. In addition to the above in the tolerances prescribed by the National Bureau of Standards it is provided as a tolerance 'discrepancies in weight or measure, due exclusively to difference in atmospheric conditions in various places, and which unavoidably result from the ordinary and customary exposure of the package to evaporation or to the absorption of water.'"

The Act in question is peculiarly framed, and Secs. 2, 3, 4, 7, 8 and 9 of same are as follows:

"Sec. 2. This Act is designated to protect purchasers of any commodity within its provisions against deception as to the quantity or amount of the commodity purchased.

Sec. 3. The provisions of this Act shall apply to foodstuffs and stuffs intended to be used or prepared for use as food for human beings, and shall apply to feed stuffs and to any commodity when sold, offered or exposed for sale in packages or containers.

Sec. 4. Except as otherwise herein provided, the net quantity of the contents in all cases of food stuff, feed or other commodities, sold or offered for sale, if in package form, other than drugs so sold in packages or containers, must be plainly and conspicuously marked in terms of weight, measure or numerical count, on the outside of the covering or container.

The quantity of the contents so marked shall be the amount of such food stuffs, feed or commodity in the package.

The statement of the quantity of the contents shall be plain and conspicuous, shall not be a part of or obscured by any legend or design, and shall be so placed and in such character as to be readily seen and clearly legible when the size of the package and the circumstances under which it is ordinarly examined by purchasers or consumers are taken into consideration.

Sec. 7. Any person who shall violate any of the provisions of this Act shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine in any sum not less than twenty-five ($25.00) dollars, nor more than two hundred ($200.00) dollars.

Sec. 8. The enforcement of the provisions of this Act shall be under the supervision of the State Superintendent of Weights and Measures.

Sec. 9. The term 'person' as used in this Act shall be deemed to include firm, company, co-partnership, corporation, association or organization, joint stock companies and receivers and distributing agents, and all officers, directors and managers of such concerns shall comply with the terms and provisions of this Act on behalf of their respective concerns.''

The other parts of the Act are immaterial to this discussion.

We first ask ourselves if this law be capable of enforcement in consonance with the right and fair conduct of the business of those who make and sell food and feed stuffs in this State and without confiscation of property consisting of unnecessary time and labor.

We see nothing herein calling for a discussion of the extent of the police power as applicable hereto. Neither the public health, safety or morals are involved. Stated succinctly the question is whether the makers and sellers of flour, meal, rice, peas, beans, dried fruits, cereals, etc., such as are ordinarily sold in packages and sacks, and which are within common knowledge subject to variation in weight, dependent on climatic and atmospheric conditions,—can be penalized for selling, offering or exposing for sale such articles in packages when the net weight of the package is not plainly and accurately marked thereon.

The facts in this case show that the correct weight of the sack of flour was plainly marked on the sack when put up by the miller on January 2, 1924. The amount of moisture content was then 13½%, same being within the Federal limitation for such content as set out in the bulletin issued under Federal statute referred to in our quotation from the agreed facts, supra. Said sack was kept twenty-three days in a dry warehouse and sold. Its moisture content by ordinary evaporation had diminished 1%. Its weight was 7 ounces less when sold. Its food value, however, was unchanged. It is manifest that each day of the twenty-three during which the sack

was in the warehouse, there was a change, however slight, in the weight of said sack of flour. Within limits peculiar to flour such weight would increase or diminish each day as the surrounding atmosphere be wet or dry. This announcement involves no legal principle and is but the statement of a fact established by science and known to all men. What we have said of flour would seem to apply to all articles of food and feed stuffs put up and sold in packages not air tight; and to attempt to penalize him who sells, offers for sale or exposes for sale a package of such stuff because it has not plainly marked on the container the exact weight of the package,—would be to place before any dealer in such stuffs his choice of being punished often and continually, or else going out of business. There appear in this law no tolerances,—no variation,— no questions of knowledge, wilfullness, intent to defraud, etc. It appears inevitable that the dealer in such articles would perforce have to weigh each package in his store every day and put thereon a new brand after each weighing, setting out the weight as of that day, according to whether the contents of such package had been increased or diminished in weight by the absorption or evaporation of moisture.

It seems to us that we need carry the argument no further. The statement of the facts carries with it its own irresistible conclusion against the soundness of this law. The condition referred to would be intolerable. The sale in this country of such stuffs in packages is imperative. The restrictions and conditions attempted to be imposed by this law are harsh and oppressive to such an extent as to render it practically incapable of enforcement and violative of the 14th Amendment to the Federal Constitution and Sec. 13, Art. 1 of our State Constitution.

The Act is also vague, indefinite and of doubtful construction, and, therefore, obnoxious to the terms of Arts. 2 and 6 of our Penal Code. To be upheld as a law any legislative Act must not be so indefinitely framed or of such doubtful construction as that it cannot be understood,—whether such defect arise from the language in which it is expressed, or from some other written law of the State. Failing to measure up to this standard any Act is wholly inoperative. Examining the Act in question, it appears to be impossible to determine who are to be held guilty under its forbiddances. The first four sections thereof which are quoted, supra, neither by name, occupation, description or otherwise refer to any person. Section 4, which is the most definite of the Act, states that the net weight of each package sold or offered for sale of the stuffs mentioned must have plainly marked on the container the net weight, etc., but does not say who shall mark same, nor does this section or any other in plain terms forbid the sale of such package unless so marked. Hundreds of packages or food and feed stuffs are exposed for sale in

thousands of stores every day. These stores have janitors and clerks who open the houses for business each day, and there are other employes who help around the business if needed. Are all to be held penal if a package of food stuff be offered or exposed for sale whose weight is incorrectly stated thereon as of that particular day? If so, the law should plainly so state.

Section 7 of the Act is also quoted above. It penalizes "any person." Section 9 is also set out. It says that within the term "person" is included any firm, company, co-partnership, corporation, association or organization, joint stock companies and receivers and distributing agents, and all officers, directors and managers of such concerns. We cannot imagine a more comprehensive list of those sought to be held punishable. Practically all the persons named should be held guiltless under our laws unless knowledge or wilfulness could be imputed to them. We bring criminals personally before the courts and juries under our procedure and enforce punishment fixed by confinement in the jails or penitentiaries. Corporations, companies, firms, co-partnerships, joint stock companies or associations could not as such be prosecuted as criminals and could not be brought in person before the courts, and a law that undertakes to so hold them, must be held unreasonable, indefinite and of doubtful construction. What we have said suffices to make it plain that in our opinion the material parts of this law are unintelligible, harsh, oppressive, incapable of enforcement and as depriving citizens of property without due process of law. Other features than those discussed might be adverted to but we deem it unnecesary. Authorities in accord with our views abound in this State and others We refer to some of them. Tozer v. U. S., 62 Fed. 917; Ex parte Roquemore, 60 Texas Crim. Rep., 287; Russell v. State, 88 Texas Crim. Rep., 512, 228 S. W. Rep., 566; Snyder v. State, 89 Texas Crim. Rep., 192, 230 S. W. Rep., 146; Griffin v. State, 86 Texas Crim. Rep., 498, 218 S. W. Rep., 494; Augustine v. State, 41 Texas Crim. Rep., 59, 52 S. W. Rep., 77; Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112; Ex parte Slaughter, 92, Texas Crim. Rep., 212, 243 S. W. Rep., 478; State v. Diamond, 202 Pac., 988; Dorsey v. State, 38 Texas Crim. Rep., 527.

There is another matter which we do not discuss at length but desire to call attention to. Article 6 of our penal Code declares inoperative any penal law which is so indefinitely framed or of such doubtful construction as that it cannot be understood, either from the language in which it is expressed, or *from some other written law of the State.* The last expression in this article does not seem to have been construed by this court in any opinion known to us. Attention of the Legislature of this State is called to the fact that Articles 699 to 701 of our Penal Code forbid in various ways the selling of food stuffs in packages whose contents are misbranded as to terms of

97 T. C.—14.

weight, and in language almost identical with that of the article under discussion here forbids any person to sell, offer for sale, or expose for sale, or have in his possession with intent to sell, any such misbranded articles. Article 713 of the Penal Code covers the same subject as applicable to flour and other mill products. Article 716 of the Penal Code applies to wheat or corn products and practically forbids the same things relative thereto. In Article 992e P. C. a person who sells or offers for sale any commodity at less than its true net weight is also penalized. There may be distinctions between the offenses referred to and made punishable in the articles above named, and the one under discussion. In view of the fact that our opinion herein holds unconstitutional the Act under discussion, it may be left out of the Legislature's consideration, but attention is called to the fact that the enactment of a similar statute with tolerance, variations and allowances such as appear in Federal enactments on the same subject might be called in question as in conflict with some of the articles above named.

For the reasons set out above the judgment of conviction will be reversed and the prosecution ordered dimissed.

*Dismissed.*