**Jack McQUEEN and Key-Western Investment Corporation, Appellants,**

v.

**Alton BELCHER et al., Appellees.**

No. 7223.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 4, 1963.

Rehearing Denied March 4, 1963.

McMahon, Smart, Sprain, Wilson & Camp, Abilene, for appellants.

Fred E. West, Lubbock, for appellees.

DENTON, Chief Justice.

This is an appeal from an order of the District Court of Crosby County overruling appellants' plea of privilege. Appellees, Alton Belcher and Ruth Belcher, filed suit against Key-Western Investment Corporation and its president, Jack McQueen, alleging the sale of securities was voidable at their election, and tendered the stock to the appellants as provided for in Section 33 of Article 581, V.A.T.S. In reply to appellants' plea of privilege to be sued in Taylor County, the county of their residence, appellees seek to maintain venue in Crosby County under Article 1995, Subsection 9.

Appellees alleged that between December, 1958, and January, 1960, they purchased several blocks of stock of appellant corporation from Jack McQueen and another representative or agent of the company. It was further alleged the stock was purchased as a result of personal solicitation of McQueen in Ralls, Crosby County, Texas, and a total

sum of $16,120.00 was paid to the corporation for such stock. These allegations were proved by the undisputed testimony of the appellees. Appellees further pleaded that the stock was not registered by notification or coordination with the Securities Commission of the State; and that appellants acted in violation of the Securities Act; and that such violations constitute a crime or offense committed in Crosby County so as to bring venue in Crosby County under Subsection 9 of Article 1995.

In an effort to prove the allegations of the violation of the Securities Act, appellees introduced into evidence a Certificate of the Securities Commissioner as authorized by Article 581, Section 30, V.A.T.S. After reciting that the records had been carefully examined, the Certificate reads as follows: " * * * and from such examination, I do further certify:

"That such records reflect that KEY WESTERN CORPORATION was issued a permit by the office of The Secretary of State to sell 250,000 shares of common stock in the State of Texas at a price not to exceed $1.50 per share, from February 17, 1956 to June 6, 1957.

"That such records fail to reflect that KEY WESTERN CORPORATION has been issued a permit to sell securities in the State of Texas from June 7, 1957, to the date of this certificate.

"IN TESTIMONY WHEREOF, I have hereunto signed my name officially and caused to be impressed hereon the Seal of the State Securities Board at my office in the City of Austin, this 10th day of October A.D., 1961.

"(S) William M. King

"Securities Commissioner"

It is appellants' contention that there was no evidence that an offense was committed by either the corporation or Mc-

Queen in Crosby County; nor was there any evidence the stock sold had not been registered under the provisions of the Securities Act. In effect, appellants argue there are three methods which render securities legally salable, to-wit: (1) By obtaining a permit; (2) To register securities by ratification; and (3) To register securities by coordination. They contend that by complying with either (2) or (3) above a permit is not required; and that appellees were therefore required to prove that all three requirements had not been complied with. This position is based on the language of Section 29, Subdivision B of the Securities Act which is a part of the penal provisions of the Act. Subdivision B makes it a felony for any person to sell, offer for sale, and so forth "any security or securities issued after September 6, 1955, unless said security or securities have been registered or granted a permit as provided in Section 7 of this Act * * *." Appellants seem to concede that the Certificate of the Securities Commissioner is proof that no permit was in effect at the time the stocks were sold, but contend that proof of nonregistration of the stocks was also required. We are unable to agree with this conclusion.

Subsection 7, subd. A provides that no dealer, agent or salesman shall sell or offer for sale any securities after September 6, 1955, except those which have been registered by notification or coordination, and until the issuer of such securities shall have been granted a permit by the Securities Commissioner. The section further sets out the procedure by which a permit may be obtained. This section requires not only that the securities be registered, but the issuer of such securities must also obtain a permit from the Commissioner. Proof of the failure to meet either of these requirements constitutes a violation of the Securities Act.

Although appellees' controverting affidavit did not specifically adopt or refer to their original petition, it quoted a material paragraph of the petition. This allega-

tion charged appellants with issuing the securities when they were not "registered with the Securities Commission, as provided by law in such cases", and that such securities were not registered either by ratification or "certification" (evidently meaning coordination). We are of the opinion these allegations are sufficient to allege a crime or offense under Subsection 9 of Article 1995. Section 12 of Article 581, V.A.T.S., reads as follows:

"Registration of persons selling

"Except as provided in Section 5 of this Act, no person, firm, corporation or dealer shall, directly or through agents or salesmen, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided. No salesman or agent shall, in behalf of any dealer, sell, offer for sale, or make sale of any securities within the state unless registered as a salesman or agent of a registered dealer under the provisions of this Act."

Section 13 provides the method of registration required of each dealer, agent or salesman of each dealer.

■ It is not contended the transactions here involved come under any exception set out in Section 5; and under Section 37 of the Securities Act it is not necessary for appellees to negative any of the exceptions of this Act. Article 581, Sections 29, subds. A through H are the penal provisions of the Act. Subdivision A of that section reads:

"Any person who shall:

"A. Sell, offer for sale or delivery, solicit subscriptions or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities without being a registered dealer or salesman or agent as in this Act provided shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than Five Thousand

Dollars ($5,000) or imprisonment in the penitentiary for not more than ten (10) years, or by both such fine and imprisonment."

When Sections 7, 29, subd. A and Section 12 are considered along with appellees' pleadings and proof, we are convinced they are sufficient to sustain the trial court's finding that appellants committed an offense in Crosby County.

■ It is well settled that under Subdivision 9 of Article 1995 a plaintiff has the burden to both allege and prove that a crime, offense or trespass was committed by defendants or their agents in the county where venue was laid. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91. Wiederkehr v. Coker, (Tex.Civ.App.), 304 S.W.2d 185. Johnson Drilling Company v. Lacy, (Tex. Civ.App.), 336 S.W.2d 230. We are convinced that under this record appellees have sustained the burden placed upon them.

The judgment of the trial court overruling appellants' plea of privilege is affirmed.

Affirmed.