**DEMPSEY–TEGELER & CO., Inc., et al.,
Appellants,**

**v.**

**Roger Scott FLOWERS and John H.
Carrell, Appellees.**

**No. 7210.**

Court of Civil Appeals of Texas,
Beaumont.

Feb. 25, 1971.

Rehearing Denied March 25, 1971.

Barefoot Sanders, Dallas, for appellant.

Don R. Kidd, Lubbock, for appellee.

KEITH, Justice.

In this appeal, we consider two orders of the District Court overruling the pleas of

privilege filed by Dempsey-Tegeler & Co., Inc., a corporation, to be sued in Harris County. In separate suits, Flowers and Carrell sought to recover the sums of money which each had paid for shares of stock in Devilliers Nuclear Corporation. Two individuals, both residents of Lubbock County, where the suit was pending, were joined as parties defendant and answered generally. Dempsey-Tegeler's pleas of privilege having been overruled, it appeals and we have consolidated the two cases for the purpose of this appeal. We will refer to the parties as they appeared in the trial court.

Plaintiffs sought to recover the precise sum paid for the shares which each had purchased from defendant, together with six per cent interest from the date of the sale, and relied for their recovery exclusively upon the provisions of The Securities Act, Article 581–1, Vernon's Ann.C.S. (hereinafter "Act"). There was no allegation of any cause of action sounding in breach of contract, fraud, or otherwise so that the pleadings tendered only the issue of a cause of action, vel non, under Section 33 of the Act.

Plaintiffs sought to maintain venue under Subdivisions 4, 9, 23, and 30, Article 1995. Insofar as Subdivision 9 is concerned, plaintiffs specifically invoked the penal provisions of the Act, Section 29B, providing a criminal penalty for the sale of securities which had not "been registered or granted a permit as provided in Section 7 of this Act." The necessary allegation was made that the corporate defendant "participated as a principal, accomplice, or accessory therein or that the offense was committed by its agent or representative while he was within the course and scope of his agency and employment."

By its first two points, defendant contends that it was error to overrule its plea of privilege because the plaintiffs failed to establish, by the pleadings or the proof, a cause of action against the defendant. The thrust of the argument is that the corporate defendant is not subject to the provisions of Section 33 of The Securities Act; and, since plaintiffs sought to allege and prove only a violation of the Act, they failed to allege or to prove the existence of a cause of action.

The Securities Act, Article 581–1, et seq., V.A.C.S., is a comprehensive statute enacted for the purpose of regulating the sale of securities in the State. Like its predecessor Act, it is "strictly penal in nature, and was enacted solely to protect the interests of the public." Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, 200 (1940). The question posed by the appeal revolves around the scope of the word "person" as found in Section 33A(1) of the Act, which created the only cause of action upon which plaintiffs sought a recovery. The pertinent provision reads:

"A. Any *person* who

"(1) Offers or sells a security in violation of Sections 7, 9 (or any requirement of the Commissioner thereunder), 12, 23B or any order under 23A of this Act,

"(2) * * * is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, * * *."[1]

The corporate appellant, recognizing the existence of Article 23, V.A.C.S. ("unless a different meaning is apparent from the context" the word " 'Person' includes a corporation"), contends that from a consideration of the entire Act, the meaning is clear: the word "person", used in Section 33, does not include corporations.

The interpretation of this particular section requires an analysis of several sections of the Act. In so doing, we will refer to the section and the particular subsection involved by a parenthetical reference. The first use of the word "person" found in the

---

1. All emphasis herein has been supplied unless otherwise indicated.

Act is in Section 2A, establishing eligibility for membership upon the Securities Board, an obvious reference to a natural person. In Section 4 are found numerous definitions: "The term 'company' shall include [2] a corporation, person, joint stock company, partnership, * * *" (B); "The term 'dealer' shall include every person or company, other than a salesman, * * *" (C); "The term 'salesman' shall include every person or company * * *" (D); " 'Issuer' shall mean and include every company or person * * *" (G); while " 'Broker' shall mean dealer as herein defined" (H).

Although the word "company" is defined to include "person" in Section 4B, supra, the disjunctive is used in Section 5, relating to exempt transactions—"company *or* person"—whereas, in Section 12, dealing with registration of sellers, the prohibition is made applicable to every "person, firm, corporation or dealer." Again we find, in Section 24, relating to hearings before the Commissioner, a reference to "person or company"; but, when we reach the provision relating to subpoena, Section 28, we find that an unauthorized disclosure by the Commissioner gives rise to a cause of action on his bond by any "affected corporation, firm or person." In Section 31, entitled "Construction", the Legislature uses "person or company" as is done in the injunctive provision, Section 32, and in Section 34, the compliance section.

On the other hand, the unqualified word "person" standing alone appears in only three sections of the Act: Section 22, relating to advertising; Section 29, containing the penal provisions of the Act; and Section 33, creating the civil cause of action.

We note in passing that the federal legislation upon the subject defines the word "person" to include corporations. Securities Act of 1933, 15 U.S.C., § 77b(2), and Securities Exchange Act of 1934, 15 U.S.C. § 78c(9). Since there is no comparable definition found in the Texas Act, we resort to the customary canons of statutory construction in an effort to determine the meaning to be given to the word as it appears in Section 33.

Although the Act is penal in nature (Kadane v. Clark, supra), we do not follow the usual rule of construing a penal statute strictly, preferring to adopt the rule laid down in Board of Ins. Com'rs v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803, 809 (1951), wherein the court said:

"The most that can be said in favor of respondents' position is that the article is both remedial and penal. 'Where a statute is both penal and remedial, as where it is penal in one part and remedial in another part, it should be considered as a penal statute when it is sought to enforce the penalty, and as a remedial statute when it is sought to enforce the remedy.' 59 C.J., p. 1121, sec. 662 [now 82 C.J.S., Statutes, § 390, p. 935]. See also 50 Amer.Jur., p. 444, sec. 423."

And, as was said in City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273, 280 (1951):

"If a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible. It certainly should not be given a narrow, technical construction which would defeat the very purpose for which the statute was enacted."

But, compare City of Corpus Christi v. Atlantic Mills Serv. Corp., 368 S.W.2d 640, 642 (Tex.Civ.App., San Antonio, 1963, error ref. n. r. e.), holding that "if the use

---

2. Section 4L is apparently sui generis to this Act, reading:
    "The term 'include' when used in a definition contained in this Act shall not be deemed to *exclude* other things or persons otherwise within the meaning of the term defined."
    Cf. Alexander v. Firemen's Insurance Company, 317 S.W.2d 752, 754–755 (Tex.Civ.App.—Waco, 1958, no writ).

of the term 'person' identifies the party against whom a violation is charged, it is strictly construed."

■ In the construction of Section 33 of the Act, we will endeavor to do so "in the light of and in connection with the other sections" of the Act in an effort to harmonize the several sections so as to effectuate the legislative intent. New Way Lumber Co. v. Smith, 128 Tex. 173, 96 S. W.2d 282, 288 (1936). And, when we come to examine the several sections of the single Act, we consider them in pari materia. State v. Dyer, 145 Tex. 586, 200 S.W.2d 813 (1947). But, in interpreting the statute, we must give consideration to all applicable sections of the Act and cannot look solely to one particular section. Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702, 704 (Tex.Sup., 1968).

The Legislature made Section 33 of the Act applicable only to a *person,* although it had used "person or company" at least eight other places in the Act, and this notwithstanding the definition of "company" found in Section 4B included corporation *and* person. This clearly demonstrates that the Legislature meant to distinguish between a "company" which included natural and artificial persons and "person" which did not include a corporation. If the Legislature meant to include corporations in the penal section (29) or that creating the civil action (33), "it would have used more apt language to describe them." State v.

Central Power & Light Co., 139 Tex. 51, 161 S.W.2d 766, 768 (1942).

■ We have no difficulty in reconciling all of the several subsections of the Act, including the myriad of definitions found therein, when we consider the obvious fact that Sections 29 and 33 are essentially parallel provisions. Section 29 creates a new penal offense and Section 33 gives rise to a new statutory cause of action.[3] So considered, the intent of the Legislature becomes clear and the word "person" used in each section can refer only to natural and not artificial persons. This result is reached when we consider the status of a corporation in Texas as a defendant in a *criminal* case.

In the excellent article, "Corporate Criminal Liability in Texas", 47 Tex.Law Rev. 60 (1968), the author makes this bold assertion: "Texas apparently is the only state that "does not permit corporations to be subjected to criminal prosecution." The existence of this legal anomaly is confirmed by the authorities cited in the margin.[4]

■ In adopting the Act, the Legislature is "presumed to have been familiar with the decisions" of the Court of Criminal Appeals, our court of last resort in such cases, that corporations generally could not be prosecuted for violations of the criminal statutes. State v. Anderson, 119 Tex. 110, 26 S.W.2d 174, 178, 69 A.L. R. 233 (1930). The courts were cautioned

3. These two sections, one criminal and the other civil, provide for new penalties not theretofore existing, yet the only reference thereto found in the caption of the Act is this cryptic reference: "prescribing penalties for violation of the Act." Acts, 1957, 55th Leg., Ch. 269, p. 576.

4. Article 22, Vernon's Ann.Penal Code; 14 Tex.Jur.2d, Corporations, § 448, p. 538; Judge Lynch International Book & Publishing Co. v. State, 84 Tex.Cr.R. 459, 208 S.W. 526 (1919); Overt v. State, 97 Tex.Cr.R. 202, 260 S.W. 856, 859 (1924); Hildebrand, "Corporate Liability for Torts and Crimes", 13 Tex.Law Rev. 253,

275 (1935); Thompson v. Stauffer Chem. Co., Consol. Chem. Ind. Div., 348 S.W.2d 274 (Tex.Civ.App.—Waco, 1961, error ref. n. r. e.); Hamilton, "Corporations and Partnerships", Annual Survey of Texas Law, 24 S.W.Law Jrl. 91, 93 (1970). But, cf., dictum in McCollum v. State, 165 Tex.Cr.R. 241, 305 S.W.2d 612, 614 (1957): "The statute under which this prosecution was conducted [Article 698b, Penal Code] prohibits pollution of public waters by corporations and companies. The conclusion here reached does not foreclose the right of the state to proceed against the Hess Terminal."

by Chief Justice Brown in Missouri, K. & T. Ry. Co. of Texas v. MaHaffey, 105 Tex. 394, 150 S.W. 881, 883 (1912), of the necessity of "avoiding any construction which implies that the Legislature was ignorant of the meaning of the language it employed."

Professor Hamilton, in the Law Review article cited (47 Tex.Law Rev. at p. 61), says that there are many Texas criminal statutes which expressly make corporations liable to prosecution, listing at least seven in his text and footnotes. It seems to be significant that these statutes designed to extend penal liability to corporations do so specifically. For instance, Article 698b, Penal Code, involved in *McCollum*, supra (fn. 4), (but since repealed) made it unlawful "for any person, firm, corporation, association, town, city or other political subdivision of this State, or any agent, officer, employee or representative" thereof to pollute the waters of the State. The present Water Pollution Act, Article 698c, § 1(4), Penal Code, provides that " 'Person' means an individual or private corporation." A similar provision is found in the Air Pollution Act, Article 698d, § 1(2), Penal Code. Both of these Acts, adopted in 1969, contain elaborate procedural provisions relating to the enforcement of the criminal penalties against private corporations. Article 698c, §§ 8–13; Article 698d, §§ 7–12.

In other statutes, similar specific language is used, e. g., Article 696a, § 2, Penal Code, which includes "any municipal corporation, private corporation, firm, or person." We note, also, the definition of the word "person" found in the Texas Regulatory Loan Act, Article 5069–2.01(a), V.A.C.S., includes "an individual, partnership, corporation, joint venture, trust, association or any legal entity however organized."

We have no such broad definition, in fact we have *no* definition of "person" in the Act which we construe here. Were we faced with language such as is found in the Regulatory Loan Act, there would be no question presented; and, we note in passing that the criminal penalty for the violation of the Regulatory Loan Act is a misdemeanor, Article 5069–8.02, not a felony as found in the Act under discussion.

If we were to construe the word "person" found in Section 29 as including corporations, we would invalidate that section of the Act. If we were to construe the identical word differently in the two sections, i. e., as not including corporations in Section 29, but as including corporations in Section 33, we would do violence to the legislative intent. By attributing the identical meaning to the word in each instance —as referring only to natural persons and *not to corporations*—we reach a harmonious result and both sections stand as written. Such an approach is in accordance with the rule of construction laid down in State v. Shoppers World, Inc., 380 S.W.2d 107, 111 (Tex.Sup., 1964).

There is still another principle of law which supports our conclusion that the word "person" found in Sections 29 and 33 of the Act does not include corporation, the rule of departmental construction. In 1965, the Attorney General ruled that a corporation could not be "indicted or tried" for violation of The Securities Act. Attorney General's Opinion No. C–423 April 16, 1965. The late Justice Norvell stated the applicable rule in Calvert v. Kadane, 427 S.W.2d 605, 608 (Tex.Sup., 1968), in this fashion:

> "If * * * the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight. [Citations omitted]"

This construction of the Act is strengthened by the fact that the Legislature has known, or is presumed to have known, for more than a half century that corporations were not subject to criminal prosecution for the violation of the *general* language of the penal laws of the State. Yet, there

was no effort made to amend the statute under consideration in at least two sessions of the Legislature which convened and adjourned after the opinion of the Attorney General was issued. Had this interpretation placed upon the statute by the officers charged with its enforcement have been unsatisfactory to the Legislature, a simple remedy was available by the process of Legislative amendment. Cf. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 186 (Tex.Sup., 1968). No such amendment was made to The Securities Act, yet, in 1967, the Regulatory Loan Act was adopted with the broad inclusion of corporations in the definition of persons with the attendant liability to the criminal sections thereof. We are led, ineluctably, to the conclusion that there has been a legislative acquiescence in the departmental construction of the Act which is reached here.

■ Plaintiffs seem to recognize that they were required to prove that "the crime, offense, or trespass was in fact committed and that it was committed in the county where the suit is pending." Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, 95 (1935); Gann v. Murray, 151 Tex. 130, 246 S.W.2d 616 (1952); Wiederkehr v. Coker, 304 S.W.2d 185, 187 (Tex.Civ.App. —Eastland, 1957, no writ); McQueen v. Belcher, 366 S.W.2d 670, 673 (Tex.Civ. App.—Amarillo, 1963, no writ); Pearson v. Stevens, 446 S.W.2d 381, 383 (Tex.Civ. App., Houston, 1st, 1969, no writ). But, as we have demonstrated, there was no valid statute imposing criminal liability upon the corporate defendant, our appellant herein. And, the validity or applicability of a criminal statute to a particular party or transaction may be raised in a venue proceeding. Gann v. Keith, 151 Tex. 626, 253 S. W.2d 413, 417 (1952).

Plaintiffs rely almost exclusively upon McQueen v. Belcher, supra. While we have great respect for both the court and the author, we are unable to follow the case completely. Insofar as *McQueen* holds that Section 29 of the Act is applicable to an individual situated as was McQueen there, we have no quarrel with the result reached. However, if the case stands for the proposition that Section 29 of the Act is applicable to a corporate defendant such as we have before us, such holding is not in accord with the rules of law which we feel compelled to follow.

The distinguished author of the opinion in *McQueen* was not presented the distinction which we have in our case. An examination of the briefs in *McQueen* discloses that both the corporate and the individual defendants appealed jointly and submitted a common brief which did not point out the very question which we have before us. In our case, we have only a corporate defendant complaining, the individual defendants having appeared generally in the trial court, and we must face the issue as raised by our appellant. Because of this difference in the posture of the appeals, we do not consider the rationale of *McQueen* to be controlling on our decision.

■ Although reliance appears to have been placed almost exclusively upon Subdivisions 9 and 23 in an effort to maintain venue, other sections were included within the controverting plea of privilege, namely Subdivisions 4 and 30. Under Subdivision 4, the plaintiff has the burden of showing that he has a cause of action against the non-resident defendant. Gough v. Fincher, 228 S.W.2d 541 (Tex.Civ.App.—Waco, 1950, no writ). Cf. MacDonald v. Trammell, 163 Tex. 352, 356 S.W.2d 143 (1962). Regardless of what might be said about the existence of a cause of action against the individual resident defendants, plaintiffs made no effort to plead or to prove a cause of action against the non-resident corporate appellant except that created by the Act. Having held that the Act creates no cause of action against the corporate defendant, it follows that plaintiff cannot maintain venue under Subdivision 4, Article 1995. MacDonald v. Trammell, supra.

■ Nor do the plaintiffs fare any better when we consider Subdivision 30, the

special venue provision of Article 1995. This subdivision, although expressed in mandatory terms, must yield to the other provisions of Article 1995. Langdeau v. Burke Investment Company, 163 Tex. 526, 358 S.W.2d 553, 556 (1962). As is said in 1 McDonald, Texas Civil Practice, (1965 Rev.Ed.) § 4.37, at p. 557, in discussing Subdivision 30: "Given a venue exception, *the burden rests upon the plaintiff to establish the determinative venue facts.*" This, of course, includes the *statement* of a cause of action in the pleading, something plaintiffs failed to do in our case.

Our dissenting brother declines, as he must, to face the problem which arises from a construction of Sections 29 and 33 in pari materia. His tacit admission[5] that corporations are excluded from the ambit of Section 29 does little to strengthen his conclusion that corporations are included in Section 33 when the Act uses the single word "person" in each instance. The scholarly approach taken by the dissent in the discussion of the rules of statutory construction is reminiscent to the so-called "pulling on the boot" argument so frequently used in the trial of cases.[6] The authorities cited are eminently respectable and sound, but they simply do not fit the question we have here. Our problem is not whether corporations should be free of statutory penalties for preying upon the unsuspecting investment public in the sale of worthless securities, for the mere statement of the question dictates the answer. We are confronted with a more immediate and pressing problem: Has the Legislature provided for the imposition of civil or criminal penalties upon corporations which actually sell unregistered securities? If the Legislature has done so, we should enforce the penalties without hesitation; but, if the Legislature has not done so, we

should point out the omission so that an appropriate statute imposing penalties can be adopted if such was the Legislative intent.

Notions of abstract justice, prejudice to the public interest, and similar considerations properly motivate all who administer the law. But, one of Texas' greatest jurists, Oran M. Roberts, stated the principle which must govern our action in this language taken from Duncan v. Magette, 25 Tex. 245, 253 (1860):

"The act of moulding justice into a system of rules detracts from its capacity of abstract adaptation in each particular case; and the rules of law, when applied to each case, are most usually but an approximation to justice. Still, mankind have generally thought it better to have their rights determined by such a system of rules, than by the sense of abstract justice, as determined by any one man, or set of men, whose duty it may have been to adjudge them.

\* \* \* \* \* \*

"To follow the dictates of justice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequences they may lead, is a duty. *This applies as well to rules establishing remedies, as to those establishing rights.*"

See also, comments of Chief Justice Calvert, dissenting in Coloma Oil & Gas Corporation v. Railroad Commission, 163 Tex. 483, 358 S.W.2d 566, 570 (1962).

We are aware of the rule that where a statute is reasonably susceptible of two constructions—one of which will render it unconstitutional—the courts will follow the interpretation which will render the act valid. County School Trustees v.

---

5. "I do not find it necessary to pass upon the problems which arise when Subdivision 9 of Article 1995 is considered, \* \* \* " (Dissent, infra, p. 217). Yet, subdivision 9 was relied upon by plaintiffs who invoked Section 29 of the Act as the "crime" mentioned therein.

6. See the late Justice Norvell's comment upon this type of argument to be found in his dissent in Holmes v. J. C. Penney Company, 382 S.W.2d 472, 475 (Tex. Sup., 1964).

District Trustees, 137 Tex. 125, 153 S.W. 2d 434, 439 (1941). By construing both sections alike, i. e., excluding corporations from "persons" affected by Sections 29 and 33, both are operative and valid. To do otherwise, would result in rendering one, Section 29, inoperative. This we decline to do, tendering to the Legislature the constitutional duty of defining the class within the reach of the penalty provisions of the Act.

■ Although this is an interlocutory appeal, the Supreme Court has potential jurisdiction to review our holdings. Article 1728, V.A.C.S., Subdivisions 1 and 2. As to Subdivision 1, see Southwestern Investment Company v. Shipley, 400 S.W.2d 304, 305 (Tex.Sup., 1966); and, as to Subdivision 2, see International Harvester Co. v. Stedman, 159 Tex. 593, 324 S.W.2d 543, 545 (1959). In order that our opinion may dispose of the entire case as presented, we turn now to the other major points brought forward by the defendant.

■ The *only proof* offered by the plaintiffs supporting the alleged cause of action, the sale of stock in violation of Section 7 of the Act, was a certificate from the Securities Commissioner. The certificate stated that "the records of Issuers' Permits" had been examined and that "such records fail to reflect that the securities of Devilliers Nuclear "Corporation have ever been registered by Qualification, Notification or Coordination, and further fail to reflect that a permit has ever been granted for the sale of "such securities in the State of Texas." The objections of the defendant were complete, concise, and detailed so as to present all the points which we will discuss. The objection was overruled and the certificate admitted into evidence. Had the certificate been excluded, plaintiffs would have had *no* evidence tending to establish the cause of action which they had pleaded.

Defendant contends that the certificate from the Commissioner, even assuming its admissibility into evidence, was insufficient to show that the sale of the stock was in violation of the Act. The pertinent provision of Section 7 of the Act reads:

"Art. 581–7. Permit or Registration for Issue by Commissioner; Information for Issuance of Permit or Registration

"A. *Qualification* of Securities.

"(1) No dealer, agent or salesman shall sell or offer for sale any securities issued after September 6, 1955, *except those* which shall have been registered *by Notification* under the subdivision B *or by Coordination* under subdivision C of this Section 7 and *except* those which come *within* the classes enumerated in subdivisions A to R, both inclusive, of *Section* 5 of this Act, or subdivisions A to K, both inclusive, of *Section* 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner; * * *."

From this premise, defendant argues that *Section* 7 provides for the sale of stock under three different statutory provisions: Under Section 7A—Registration by Qualification—generally issued by a company with little or no operating history, offered for sale only in Texas and not registered by the Securities & Exchange Commission in Washington; under Section 7B—Registration by Notification—generally issued by a company with at least three years' satisfactory operating history, offered for sale in Texas only and not registered with the S. E. C.; and, under Section 7C—Registration by Coordination—usually a procedure used where the securities have been registered with the S. E. C. and will be sold in Texas and other states.

There are, according to defendant, two other provisions which permit the sale of stock without compliance with the Act: exempt securities under Section 6 (those listed upon a recognized stock exchange), and exempt transactions under Section 5.

The thrust of the defendant's argument is that Section 7A(1), relating to issuer's permits has "no relation to registration by notification or coordination, or to exempt transactions or exempt securities—but the records of Issuers' Permits are all that were examined as a basis for the certificate."

We are not favorably impressed with this argument for which the defendant cites no supporting authority. Under Section 30, it is provided that:

"*  *  * a certificate under the seal of the state, duly signed by the Commissioner, showing compliance or non-compliance with the provisions of this Act respecting compliance or non-compliance with the provisions of this Act by any dealer or salesman, shall constitute prima facie evidence of such compliance or of such non-compliance with the provisions of this Act, as the case may be, and shall be admissible in evidence in any action at law or in equity to enforce the provisions of this Act."

■ We also note that Section 37 places the burden of proving an exemption upon the party claiming the same and that it is not necessary to negative any exemptions in any proceeding brought under the Act. Cf. Dean v. State, 433 S.W.2d 173, 178 (Tex.Crim.App., 1968). Defendant's complaints as to the admissibility of the certificate of the Commissioner are overruled.

By supplemental brief, defendant contends that the plaintiffs failed to discharge the burden of proving the cause of action, if any was alleged, citing Southwestern Transfer Company v. Slay, 455 S.W.2d 352 (Tex.Civ.App.—Beaumont, 1970, no writ), wherein we held that proof of a prima facie cause of action (under the doctrine of res ipsa loquitur) was insufficient to overcome the defendant's prima facie right to a transfer under the plea of privilege. The position so taken by the defendant is consistent with our holding in *Slay*. We perceive no distinction between a pri-

ma facie cause of action being established by a court-made rule (as in *Slay*) and one established by a statute as here.

■ The certificate of the Commissioner, when admitted into evidence, proved at best only a prima facie cause of action; it did not overcome the right of the defendant to be sued in the county of its domicile. Under the rationale of *Slay*, it was error for the trial court to overrule the pleas of privilege filed by the defendant.

If this were the only error on the part of the trial court, we would, in the interest of justice, reverse the judgment and remand the cause for a new trial on the venue issue, just as we did in *Slay*. But, plaintiff, having failed to allege a cause of action upon which a recovery could be based, has failed to discharge the substantive burden necessary to maintain venue under any of the subdivisions relied upon. The judgments of the trial court are here and now reversed and the causes remanded to the trial court with instructions to transfer each cause, insofar as it relates to the defendant Dempsey-Tegeler & Co., Inc., to the District Court of Harris County, Texas.

Reversed and remanded with instructions.

STEPHENSON, Justice (dissenting).

I would affirm the judgment of the trial court. The plaintiffs both relied upon Subdivision 23 of Article 1995, V.A.C.S., to retain venue in Lubbock County. In my opinion they discharged their burden of alleging and proving their causes of action under Section 33 of The Securities Act, against a foreign corporation, in Lubbock County. I do not find it necessary to pass upon the problems which arise when Subdivision 9 of Article 1995 is considered, as pointed out in the majority opinion.

The majority opinion turns this case upon the failure of Section 33 to specifically mention the word "corporation" in

providing for civil liability. The basis for this argument is that Section 33 uses the word "person" and the Act does not define the word "person". It is therefore concluded the word "person" does not include a "corporation" and defendant is home free. From a study of the statutory and case law rules of construction, I do not arrive at that conclusion.

First, as mentioned in the majority opinion, Article 23, V.A.C.S., provides that the word "person," when used in our statutes, includes a "corporation" unless a different meaning is apparent from the context. Also, Article 10(6), V.A.C.S., under general rules for construction of laws, reads as follows:

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

This being a new section, we still look to the *evil* and the *remedy*. The evil being the sale of securities in violation of this Act, and the remedy being civil liability on the part of the seller.

Chief Justice Calvert, recently wrote in Southwestern Sav. & L. Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917, 921 (1960):

"A statute should not be shorn of its effectiveness if its purpose can be achieved by a reasonable interpretation."

Citing Huntsville Independent School District v. McAdams, 148 Tex. 120, 221 S.W. 2d 546 (1949); Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162 (1918). To me it is not reasonable to interpret this Act to place a corporation in a preferred position and permit it to sell securities in violation of the Act without the same civil liability imposed upon an individual. This provision of the Act (Section 33) would be shorn of its effectiveness if it be construed to mean civil liability under the Act could

be avoided by the mere expediency of incorporation.

In Calvert v. British-American Oil Producing Co., 397 S.W.2d 839, 842 (Tex.Sup., 1965), the Supreme Court said:

"The courts necessarily look diligently for the intention of the Legislature as the intention of the Legislature is the dominant consideration in construing a statute."

Citing State v. Dyer, 145 Tex. 586, 200 S. W.2d 813 (1947); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W. 2d 273 (1951).

Again, in Edwards v. Morton, 92 Tex. 152, 46 S.W. 792, 793 (1898), it is written:

"The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature, and to conclusions inconsistent with the general purpose of the act."

Also, in Texas & N. O. Ry. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W. 2d 626, 629 (1947):

" * * * whenever the legislative purpose is ascertained, the significance of words used may be restricted or enlarged in order to effectuate that purpose and to give the act the meaning which the lawmakers manifestly intended."

To the same effect is Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455, 458 (1942):
"This is because of the rule that a statute will not be construed so as to ascribe to the Legislature an intention to do an unjust or an unreasonable thing, if such statute is reasonably susceptible of a construction that will not accomplish

such a result." Citing Trimmier v. Carlton, 116 Tex. 572, 296 S.W.2d 1070 (1927).

The same rule is also expressed in these terms in National Surety Corporation v. Ladd, 131 Tex. 295, 115 S.W.2d 600 (1938), in syllabus 10:

"Where the intention of a statute is not clearly expressed or is so inadequately expressed that the court must resort to construction, it is proper to consider the results of any proposed construction, and the court will, if possible, place on the statute a construction which will not result in injustice, inconvenience, unreasonableness, prejudice to public interest, or absurd consequences."

A reasonable construction of The Securities Act, as a whole, is that its purpose is to regulate the sale of securities so that generally both the securities and the seller of the securities must be registered. It is apparent that the Legislature, in Section 33, intended to provide a specific form of legal remedy so that the amount paid, interest and exemplary damages in some instances may be recovered by the purchaser, when the provisions of the Act are not complied with by the seller. As said by the Supreme Court in Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197 (1940), this Act "was enacted solely to protect the interests of the public."

Section 12, together with the entire Act makes it clear that a corporation may sell securities in Texas. Section 13 provides for the means for registration as a dealer, and has specific requirements for a corporation. Section 22 of the Act, on advertising, is good evidence that the Legislature intended to include a "corporation" when it used the term "person." In Subdivision A, it is provided that it is unlawful for a *person* to advertise unless such section is complied with. Then, under Subdivision B, it is said:

"(1) If such person, company, dealer, agent or salesman shall have been registered as in this act provided; * * *"

demonstrating that, even though at the outset of Section 22 only the word "person" was used, later it is written "such *person, company*, [etc.]" was the meaning intended by the use of the word "person."

To paraphrase the Ladd Case, supra, I would not place a construction upon Section 33 which would result in an injustice, prejudice to public interest, and absurd consequences. Under Article 23, V.A.C.S.,

I do not conclude that it is apparent from the context of Section 33 that the Legislature did not intend to include a corporation when it used the word "person." Other cases in which the word "person" has been construed to include a corporation, under Article 23, V.A.C.S., are: State v. Country Club, 173 S.W. 570 (Tex.Civ.App.—Austin, 1914), reversed on other grounds, 110 Tex. 40, 214 S.W. 296 (1919); City of Tahoka v. Jackson, 115 Tex. 89, 276 S.W. 662 (1925); Allison v. Richardson, 171 S.W. 1021 (Tex.Civ.App.—Dallas, 1914), reversed on other grounds, 213 S.W. 252 (Tex.Comm.App., 1919); James N. Tardy Co. v. Tarver, 120 Tex. 591, 39 S.W.2d 848 (1931); Ginther v. Southwest Workover Company, 286 S.W.2d 291 (Tex.Civ.App.—San Antonio, 1955, no writ); City of Corpus Christi v. Atlantic Mills Serv. Corp., 368 S.W.2d 640 (Tex.Civ.App.—San Antonio, 1963, error ref. n.r.e.).

Plaintiffs have discharged their burden by pleading and proving venue should be maintained in Lubbock County under Section 23, Article 1995, V.A.C.S. Plaintiffs plead that defendant had violated the Texas Securities Act by selling securities in Texas which had not been registered. Proof was made that the securities were sold to plaintiffs by defendant's agent in Lubbock County, and that such securities were not registered. Non-registration was proved in accordance with Section 30 of Article 581–1. Each of the salesmen making the sales complained of testified that they were licensed to sell stock only through defendant, and that they sold stock in Devillier Nuclear Corporation to plaintiffs through solicitation in Lubbock Coun-

ty. McQueen v. Belcher, 366 S.W.2d 670 (Tex.Civ.App.—Amarillo, 1963, no writ).

Defendant's brief contained no points of error complaining of the action of the trial court on the ground that proof of non-compliance through that use of Section 30 would not overcome defendant's right to a transfer under the plea of privilege. This matter was raised by supplemental brief at the invitation of Justice Keith at the time of oral argument. This new concept as to proof of a prima facie cause of action in a venue case is set forth at length in the majority opinion in Southwestern Transfer Company v. Slay, 455 S.W.2d 352 (Tex. Civ.App.—Beaumont, 1970, no writ). I dissented in that case, and here again call attention to my contentions in that regard. Assuming, arguendo, that the majority was correct in a "res ipsa loquitur case," I feel it would still have no application to the present situation. The Legislature, under the Act in Section 30, has specifically provided a method of proving non-compliance. In the eyes of the majority, the Legislature made one fatal mistake, and that was the use of the term "prima facie evidence." The first part of the paragraph from Section 30 quoted by the majority is as follows:

"In any prosecution, action, suit or proceeding before any of the several courts of this state based upon or arising out of or under the provisions of this Act, * * *."

That provision is, without question, broad enough to include a plea of privilege, and plaintiffs were required to do no more than is set forth in Section 30 to prove non-compliance. In my humble opinion, a reasonable construction of the use of the term "prima facie evidence" in Section 30 means that the fact of non-compliance is established by the certificate unless the defendant offers evidence to the contrary to raise a question of fact. This the defendant made no effort to do in the case before us.